IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT


No. 98-60057


THE BROOKLYN UNION GAS COMPANY;
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC;
PECO ENERGY COMPANY; SOUTHERN NATURAL GAS COMPANY;
AMOCO PRODUCTION COMPANY AND
AMOCO ENERGY TRADING CORPORATION;
DESTIN PIPELINE COMPANY, LLC;
SOUTH CAROLINA PIPELINE CORPORATION;

                                        Petitioners

                        versus

FEDERAL ENERGY REGULATORY COMMISSION;

                                        Respondent


Petition for Review of an Order of the
Federal Energy Regulatory Commission


September 17, 1999

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DAVIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

        We are asked today to decide whether the Federal Energy
Regulatory Commission had jurisdiction over pipeline facilities
newly constructed by Transcontinental Gas Pipe Line Corporation for
transporting gas from the Gulf of Mexico to the shore and questions
of how the expense of constructing the new pipeline should be
distributed.  The case before us arose from an Application filed

with the Commission in 1996 by Transco under Section 7(c) of the Natural Gas Act, 15 U.S.C. § 717(f), seeking a certificate of public convenience and necessity to extend its existing system by building and operating new offshore natural gas facilities in the Gulf of Mexico, called the Mobile Bay Project.

In turn we will address questions of standing, regulatory reach of the Commission, cost and pricing. The latter includes the related question of whether Transco included the full costs of its expansion or segmented a larger project to gain advantage from rules that favor roll-in rates over incremental pricing when doing so would not increase prices more than five percent.

I

After applying for a certificate of public convenience and necessity, Transco conducted an "open season," soliciting transportation customers for the planned service addition. There was little customer interest. Transco and WESCO, an affiliate gas marketing company, executed a 15-year "Precedent Agreement" that WESCO would take prescribed levels of service over the new facilities. Transco also received some offers to relinquish capacity from some of its existing Mobile Bay lateral shippers. In April 1997 Transco amended its application, reducing the size of the proposed addition to fit the WESCO commitment and the relinquishments. It then proposed to build the facilities and place them in service in two phases. Phase I would consist of 57 miles of 24-inch diameter pipeline extending from the East Main

2

Pass, Block 261, to a proposed new junction platform in the Mobile Bay area, Block 822; 19 miles of 30-inch diameter pipe would extend from the platform at Block 822 to a non-jurisdictional gas processing plant in Mobile County, together with 36-inch pipe from the processing plant to Transco's Compressor Station 82, together with a 15,000 horsepower compression addition at Transco's existing Station 82. In Phase II Transco would build a new Compressor Station 83 with a 15,000 hp unit on the Mobile Bay Lateral, downstream of Station 82.

Under the amended proposal the initial rates to be charged WESCO for service on the expanded facility would conform to the existing maximum rate under Transco's generally applicable rate Schedule FT for firm transportation within its rate Zone 4A, encompassing the Mobile Bay Lateral.

Transco estimated the costs of the project at approximately $120.2 million and submitted that its rate impact would be under five percent and hence it was entitled to a presumption of rolled-in-rate treatment. Responding to the requirement that it demonstrate that the expansion brought system benefits, Transco urged that there were both operational and financial benefits to its existing system customers. These benefits, it urged, included increased access to additional sources of gas supply, enhanced reliability of peak service based on the increased supply and compression, greater flexibility, and reduced costs of future expansions.

FERC first concluded that the proposed facilities were gas

3

transmission facilities subject to the regulatory reach of NGA §
1(b) rather than exempt gas gathering facilities.  In this first
order the Commission also preliminarily determined that the
requested certificate was required by the public convenience and
necessity under NGA § 7(c), subject to specified conditions; that
absent changed circumstances, Transco should be permitted to roll
the costs of the facilities into its system rates when Transco
filed a generally applicable rate case under § 4 of the NGA.  See
Pricing Policy for New and Existing Facilities Constructed by
Interstate Natural Gas Pipelines, 71 F.E.R.C. ¶ 61,241, reh'q
denied, 75 F.E.R.C. ¶ 61,105 (1996).

Brooklyn Union and numerous other companies, some gas
transportation customers of Transco, challenged the Commission's
assertion of jurisdiction and its order allowing roll-in rates.
Amoco Production Company also challenged the ruling on roll-in
pricing and urged the Commission to put Transco at risk should the
facilities be underutilized.  Amoco is a gas producer shipping on
Transco's system and competing with WESCO in the sale of gas.
Petitioners Destin Pipeline Company and Southern Natural Gas
Company compete with Transco, and they challenged the orders
allowing roll-in pricing.  Completing the array of challengers,
South Carolina Pipeline Corporation, a Transco pipeline customer
who also competed with WESCO in the sale of gas in South Carolina,
challenged as discriminatory the order allowing Transco to charge
WESCO the existing rate until the next rate case.  The Commission
rejected all these contentions and the petitions for review now

4

before this court followed.

II

Transco and the Commission challenge the standing of petitioners, urging that none was aggrieved within the meaning of § 19(b) of the NGA by the orders they contest. The principles are well developed. We have refused to review Commission orders that are not "definitive" in their impact upon the rights of the parties and that do not threaten the petitioner with irreparable harm. Pacific Gas & Elec. Co. v. FERC, 106 F.3d 1190, 1194 (5th Cir. 1997) (citing Transcontinental Gas Pipe Line Corp. v. FERC, 589 F.2d 186, 189 (5th Cir.), cert. denied, 445 U.S. 915 (1979)).

"A party has not been 'aggrieved' by a FERC decision unless its injury is 'present and immediate.'" Pacific Gas & Elec. Co. v. FERC, 106 F.3d 1190, 1194 (5th Cir. 1997)(quoting Tenneco, Inc. v. FERC, 688 F.2d 1018, 1022 (5th Cir. 1982)). Relatedly, the dispute must be ripe for review. This kindred doctrine shifts to a temporal focus, timing review to secure a fit of controversy and judicial resolution. Ripeness considers the fluidity of the events defining the dispute, such as whether the claim rests upon facts yet airborne or sufficiently upon facts that have found ground. It then balances the hardship of withholding decision and the fitness of the case for judicial resolution. Courts work best with historical facts and often must wait until history is determinable. See Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967); Texas v. United States, 118 S. Ct. 1257, 1259 (1988). At the same time there is no requirement for finality in the usual sense in which we

5

look for a final "judgment." While we must not smuggle in these familiar limits of 28 U.S.C. § 1292 upon appellate jurisdiction, they are not irrelevant to the question of ripeness, whether events are sufficiently settled.

The regulatory jurisdiction of the Commission aside, the issues in this case trail from the overarching question of incremental versus roll-in rate pricing. Absent roll-in rates, there is no proximate injury to the petitioners. And no petitioner is aggrieved by the Commission decision that the project is for the transport of interstate gas and not for its gathering, beyond the pricing question.

The Commission urges that its decision to allow Transco to roll in its costs have no impact on rates and could not have impact absent the turn of several events, each yet contingent. The argument continues that Transco must first file for the rates and that is not certain. The reply from petitioners is that the Commission's order is a determination adverse to their interest, particularly to Transco's competitors, not unlike the determination in ANR Pipeline Co. v. FERC, 771 F.2d 507 (D.C. Cir. 1985). Pointing to the Pricing Policy Statement in which the Commission stated that it will "summarily resolve the pricing issue in the first rate case consistent with its certificate decision," petitioners challenge the assertion that the order has given Transco only a "leg up." Absent changed circumstances, the order stands. Petitioners also point out that WESCO is granted an immediate competitive advantage, and companies such as AETC will be

6

subsidizing its competitor WESCO in that WESCO is not carrying the cost burdens of an incremental rate.

The Commission points to the recent decision in <u>New</u> <u>York</u> <u>State</u> <u>Electric</u> <u>&</u> <u>Gas</u> <u>Corp.</u> <u>v.</u> <u>FERC</u>, 177 F.3d 1037 (D.C. Cir. 1999). The D.C. Circuit dismissed for lack of jurisdiction a challenge to an order preliminarily approving roll-in pricing when certifying new pipeline construction as here. Petitioners respond that the case is distinguishable in that NYSEG rejected a customer-petitioner's claim of current injury based on increased rates because those increases actually stemmed from orders not on review.

The threshold questions of whether petitions have standing, were aggrieved, and whether the case is ripe turn here on whether the order preliminarily approving roll-in rates caused petitioners present injury. WESCO and companies like Destin are competitors, and WESCO will enjoy large advantages if roll-in rates are allowed. Providing the roll-in subsidy allows WESCO to receive 100 percent of the transportation capacity while paying for only 41 percent of the cost of service, $10.9 million. Transco's unaffiliated ratepayers will suffer an initial annual cost shift of $15.7 million. Petitioners urge that the proposed rate has immediate and injurious consequences in the market is plain. Southern Natural Gas urges that the "very prospect of subsidized, rolled-in rates of $0.28 per Dth from Transco's Mobile Bay Expansion to Southern's Zone 3 discourages subscriptions for competing capacity on Southern."

The Commission and Transco accent the preliminary character of

the order and the opportunity of all parties to challenge the rate decision in Transco's rate case. They argue that any competitive disadvantages from market anticipations of the likelihood of roll-in rates are remote reverberations to be ignored—at least too ephemeral to be caught by a judicial hand. In this assertion the Commission travels against its efforts to give predictability and assurance to an industry faced with large capital decisions. To the extent the Commission softens the bite of its preliminary decision, it risks a toothless presumption and heightens the risk of Transco.

All said, the inherent uncertainty of future events and the equivocal footing for any finding of current injury lends commonsense support to the Commission and Transco's urging of wait and see. The price of delay is that petitioners must have a full opportunity to challenge the roll-in rates, including the footing of the presumption of roll-in rates itself.

III

We are persuaded that there is Article III standing and that we have aggrieved petitioners. Ripeness, however, is an even closer question. Its resolution is informed by additional circumstances that awaiting the rate case may mitigate if not cure. The Commission has initiated a Notice of Inquiry in response to our decision in Sea Robin Co. v. FERC, 127 F.3d 365 (5th Cir. 1997). See Alternative Methods for Regulating Natural Gas Pipeline Facilities and Services on the Outer Continental Shelf, FERC Stats. and Regs. ¶ 35,532 (1998). The Commission did not take this case

8

as an occasion for that response. The result is uncertainty of the Commission's position in the interim.

In granting Transco's request for advance approval of roll-in rates, the Commission summarily found that the impact of roll-in rates was less than five percent and that Transco had demonstrated specific system benefits in a case in which many customers protested and the immediate benefits flow directly to WESCO, the sole shipper subscribing and a Transco affiliate, a circumstance that ought to trigger a hard look. The record reflects little consideration to the assertion that Transco's cost estimates were unreasonable and were segmented by Transco to travel under the five percent rule.

We decide the merits of none of these issues today. We recite them only to emphasize that they remain open for contest when Transco files its rate case. The motions to dismiss the petitions for lack of justiciability, specifically that the orders they challenge are not ripe for decision, are granted. We accept the invitation of Transco and the Commission and direct that the petitioners may present their contentions to the Commission when Transco files its rate case.

Questions of whether a petitioner is aggrieved and whether the case is ripe for review are often nestled in clusters of fact and circumstance unique to the case. In refusing to allow this case to proceed to the merits we need not conclude that such "preliminary" orders are never immediately reviewable, and we do not.

DISMISSED.