# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 28, 2009

Charles R. Fulbruge III
Clerk

No. 08-60730

ENERGY TRANSFER PARTNERS, L.P.; ENERGY TRANSFER COMPANY; ETC MARKETING LTD; HOUSTON PIPE LINE COMPANY, L.P.; OASIS PIPELINE L.P.; OASIS PIPELINE COMPANY TEXAS L.P.; ETC TEXAS PIPELINE LTD, OASIS DIVISION,

Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.

Petition for Review of Orders of the
Federal Energy Regulatory Commission

Before JOLLY, SMITH, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Energy Transfer Partners, L.P. and related entities (to which we will refer individually and collectively as ETP) petition for review of an order of the Federal Energy Regulatory Commission (FERC or Commission) denying rehearing of an order that alleges ETP violated the Natural Gas Act (NGA), the Natural Gas Policy Act (NGPA), and FERC's implementing regulations and in which FERC proposed substantial penalties. ETP also petitions for review of a FERC order requiring an adversary hearing on these issues before an

administrative law judge (ALJ). Because the issues presented are not ripe for review, we dismiss the petition.

## I

After two years of investigation, FERC issued a Show Cause Order that included its preliminary determinations that: (1) ETP had manipulated wholesale natural-gas prices, in violation of FERC's regulations under the NGA, and (2) ETP's pipeline companies had unduly discriminated against nonaffiliated natural-gas pipeline shippers, unduly preferred affiliated natural-gas pipeline shippers, and charged rates for pipeline transportation service in excess of the maximum lawful rate, in violation of FERC's regulations under the NGPA.[1] As the consequence for the alleged NGA violations, FERC proposed a civil penalty of $82,000,000, disgorgement of unjust profits in the amount of $69,866,966 plus interest, and revocation of ETP's blanket certificate to sell natural gas.[2] Additional penalties were proposed for the alleged NGPA violations, and FERC directed ETP to respond to the specific allegations detailed in the Show Cause Order.[3]

ETP filed an expedited request for rehearing and for a stay of the Show Cause Order, contending that adjudication of civil penalties under the NGA or NGPA should proceed in a de novo trial before a federal district court rather than in administrative proceedings. ETP also asserted that FERC's statements in the Show Cause Order gave the appearance of prejudgment, depriving ETP

---

[1] *Energy Transfer Partners, L.P.*, 120 FERC ¶ 61,086, 2007 WL 2153254 (2007).

[2] *Id.* at \*49.

[3] *Id.*

of due process of law. In an order denying rehearing, FERC rejected ETP's arguments and denied the request to stay the Show Cause Order.[4]

ETP subsequently filed a petition for review of the Show Cause Order and Order Denying Rehearing in this court. FERC moved to dismiss the petition, contending that the orders were not final because the FERC proceedings initiated therein were ongoing. We granted FERC's motion and dismissed ETP's first petition for lack of jurisdiction.[5]

Meanwhile, in response to the Show Cause Order, ETP filed its answer to the Commission's allegations, asserting that it had not violated the NGA or the NGPA, and requested summary disposition. The Commission thereafter issued an Order Establishing Hearing in which it found "that there are genuine issues of fact material to the decision of this proceeding [that] require a hearing before an ALJ" and accordingly denied ETP's motion for summary disposition.[6] That order initiated what FERC described as "a trial-type evidentiary hearing before an administrative law judge," specifying that an ALJ should determine whether ETP violated FERC's market-behavior rule and whether ETP unjustly profited from its activities, and, if so, the level of unjust profits. FERC "reserved to itself" the issue of whether civil penalties, other remedies, or both should be imposed. ETP again filed a request for rehearing and a stay on the same grounds as in its earlier request for rehearing of the Show Cause Order.

---

[4] *Energy Transfer Partners, L.P.*, 121 FERC ¶ 61,282 (2007).

[5] Order, *Energy Transfer Partners, L.P. v. FERC*, No. 07-61021 (5th Cir. Mar. 17, 2008) (per curiam).

[6] *Energy Transfer Partners, L.P.*, 123 FERC ¶ 61,168 (2008).

FERC denied ETP's request for rehearing and a stay.[7] ETP then filed a second petition for review before this court, now challenging the Order Establishing Hearing,[8] and subsequently filed an amended petition adding the Show Cause Order[9] to its petition. ETP voluntarily withdrew its challenge of NGPA-related issues after a settlement of those issues was reached.

## II

In order to determine whether the issues presented are ripe for review, it is necessary to understand the parties' respective positions. ETP contends that it has the "statutory right to have its civil penalty liability determined, in the first instance, by a federal district court." ETP relies on language in § 24 of the NGA, which states that federal district courts "shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder."[10] ETP contends that federal district courts have "exclusive

---

[7] *Energy Transfer Partners, L.P.*, 124 FERC ¶ 61,149 (2008).

[8] *Energy Transfer Partners, L.P.*, 123 FERC ¶ 61,168.

[9] *Energy Transfer Partners, L.P.*, 120 FERC ¶ 61,086 (2007).

[10] 15 U.S.C. § 717u. Section 24 provides in its entirety:

> The District Courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder. Any criminal proceeding shall be brought in the district wherein any act or transaction constituting the violation

jurisdiction" to determine if it has violated the NGA and is liable for civil penalties. ETP apparently concedes that FERC is empowered by § 22 of the NGA[11] to propose and assess a civil penalty for violations of the NGA or regulations promulgated under the NGA's authority. ETP asserts, however, that it is entitled to a de novo proceeding in a federal district court by virtue of § 24 of the Act, 15 U.S.C. § 717u, quoted above, to challenge the assessment of a penalty, and ETP maintains that FERC does not have the authority to require trial-type proceedings before an ALJ to resolve whether violations of the NGA occurred.

FERC has taken the position in its motion to dismiss this petition and in its underlying "Order Denying Expedited Request for Rehearing and Stay and Addressing Future Civil Penalty Procedures"[12] that there is no de novo review of civil penalties in a federal district court. FERC points out that unlike the

occurred. Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder may be brought in any such district or in the district wherein the defendant is an inhabitant, and process in such cases may be served wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, and 1292 of Title 28. No costs shall be assessed against the Commission in any judicial proceeding by or against the Commission under this chapter.

[11] 15 U.S.C. § 717t-1.

[12] *Energy Transfer Partners, L.P.*, 121 FERC ¶ 61,282 (2007).

NGPA[13] and the Federal Power Act,[14] the NGA does not provide for de novo review of a penalty in a federal district court and that the absence of de novo review language in the NGA evinces congressional intent. FERC takes the position that it is authorized by 15 U.S.C. § 717t-1 to require a public hearing, including an adversarial proceeding before an ALJ, and that upon finding that the NGA has been violated, FERC may assess a civil penalty. The Commission maintains that ETP would then be entitled to petition for review by a court of appeals pursuant to § 19(b) of the NGA, 15 U.S.C. § 717r(b), and that the standard of review would be for substantial evidence. FERC argues that it is only in a collection action, once penalty proceedings are final, following appellate review in a court of appeals if review is sought, that a federal district court would have "exclusive jurisdiction." The standard of review in a collection action before a district court would be substantial evidence, according to FERC.

ETP contends in this court that FERC's construction of the NGA is incorrect and that being compelled to participate in an invalid administrative process is an injury that confers "standing" for it to pursue the present petition for review. The crux of ETP's argument is that FERC has ordered an unlawful hearing before an ALJ and that there is no adequate remedy for being required

---

[13] 15 U.S.C. § 3414(b)(6)(F) ("If the civil penalty has not been paid within 60 calendar days after the assessment order has been made under subparagraph (E), the Commission shall institute an action in the appropriate district court of the United States for an order affirming the assessment of the civil penalty. The court shall have authority to review de novo the law and the facts involved, and shall have jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part, such assessment.").

[14] 16 U.S.C. § 823b(d) (providing that one against whom a penalty is assessed may elect to petition for review to a court of appeals or alternatively elect a procedure requiring the Commission to assess the penalty promptly and, if the penalty has not been paid within sixty days, institute an action for de novo review in the district court to affirm the assessment).

to participate in that hearing. Only a petition for review at this juncture, ETP asserts, will provide meaningful relief.

The parties agree that the statute governing this court's jurisdiction to consider ETP's petition is § 19(b) of the NGA.[15] No party contends that a federal district court has jurisdiction to review FERC's order requiring a hearing in this case, and we are aware of no authority to that effect. Accordingly, we will analyze whether this petition for review should proceed under § 19(b) of the NGA and the precedents construing and applying that statute.

## III

Section 19(b) of the NGA provides in pertinent part: "Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States . . . ."[16] Our court has long recognized that this section of the NGA does not require that an order be a "final" one;[17] rather, the inquiry is whether a party has been "aggrieved" by an order of the Commission. We have, however, "declined to review non-final orders that are not 'definitive' in their impact upon the rights of the parties and do not threaten the petitioner with 'irreparable harm'."[18] We have said that this "is a requirement that the order have some substantial effect on the parties which cannot be altered by

---

[15] 15 U.S.C. § 717r(b).

[16] *Id.*

[17] *See, e.g., Atlanta Gas Light Co. v. Fed. Power Comm'n*, 476 F.2d 142, 147 (5th Cir. 1973) ("The Act does not require that the order be 'final' . . . .").

[18] *Id.*

subsequent administrative action."[19] We have reasoned that "[a] party has not been 'aggrieved' by a FERC decision unless its injury is 'present and immediate,'"[20] and that "[r]elatedly, the dispute must be ripe for review."[21]

In determining whether a FERC order is ripe for review, our court has utilized the factors set forth by the Supreme Court in *Abbott Laboratories v. Gardner*.[22] In that case a regulation promulgated by the Secretary of Health, Education, and Welfare pursuant to the Food, Drug, and Cosmetic Act was challenged, and the Supreme Court concluded that the issue of ripeness of agency action for judicial review "is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."[23] From *Abbott Laboratories*, this court has distilled four factors in its ripeness analysis of FERC orders:

> (1) whether the issues presented are purely legal; (2) whether the challenged agency action constitutes "final agency action," within the meaning of Section 10 of the Administrative Procedure Act; (3) whether the challenged agency action has or will have a direct

---

[19] *Id.*

[20] *Brooklyn Union Gas Co. v. FERC*, 190 F.3d 369, 373 (5th Cir. 1999) (internal quotation marks omitted) (quoting *Pac. Gas & Elec. Co. v. FERC*, 106 F.3d 1190, 1194 (5th Cir. 1997)).

[21] *Id.*; *see also Miss. Valley Gas Co. v. FERC*, 659 F.2d 488, 497 (Former 5th Cir. Oct. 1981) ("Although this statute does not impose a requirement of ripeness on the Commission's orders to establish jurisdiction for judicial review, the courts have long held that orders under this provision must be ripe for judicial review before they will address the merits of any petition.").

[22] *See Pennzoil Co. v. FERC*, 645 F.2d 394, 398 (5th Cir. May 1981) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-54 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

[23] *Abbott Labs.*, 387 U.S. at 149.

and immediate impact upon the petitioners; and (4) whether resolution of the issues will foster, rather than impede, effective enforcement and administration by the agency.[24]

The regulations at issue in *Abbott Laboratories* required manufacturers of prescription drugs to print certain information on drug labels and advertisements. The Supreme Court held that the regulations were "definitive" statements of the Commission's position[25] and had a "direct and immediate . . . effect on the day-to-day business" of the complaining parties.[26] The Court determined that the regulations had "the status of law" and "immediate compliance with their terms was expected."[27] The Court observed that "[i]f petitioners wish to comply they must change all their labels, advertisements, and promotional materials; they must destroy stocks of printed matter; and they must invest heavily in new printing type and new supplies."[28] The Court recognized that the "alternative to compliance–continued use of material which they believe in good faith meets the statutory requirements, but which clearly does not meet the regulation of the Commissioner–may be even more costly" and "would risk serious criminal and civil penalties for the unlawful distribution of 'misbranded' drugs."[29] The regulations were ripe for review.

---

[24] *Pennzoil*, 645 F.2d at 398 (citation omitted) (citing *Abbott Labs.*, 387 U.S. at 149-54).

[25] *Abbott Labs.*, 387 U.S. at 151.

[26] *Id.* at 152.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 153.

9

In *Federal Trade Commission v. Standard Oil Company of California*, the Supreme Court subsequently contrasted the regulations under consideration in *Abbott Laboratories* with an agency's complaint alleging statutory violations.[30] In *Standard Oil*, the Federal Trade Commission (FTC) issued an administrative complaint against Standard Oil Company of California (Socal) alleging that Socal had violated the Federal Trade Commission Act by conspiring with other oil producers to contrive gasoline shortages.[31] While an adjudication of these charges was pending before an ALJ, Socal sought an order in federal district court declaring that the issuance of the FTC's complaint was unlawful and requiring that the complaint be withdrawn.[32]

The Supreme Court concluded that issuance of the complaint by the FTC was not a "final agency action" within the meaning of the APA.[33] The Court reasoned that the complaint was not a definitive ruling or regulation and had no legal force or practical effect on Socal's daily business other than the burden of responding to the allegations.[34] The Supreme Court also concluded that "[j]udicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise"; "judicial review . . . would delay resolution of the ultimate question whether the Act was violated";[35] and

---

[30] 449 U.S. 232, 234 (1980).

[31] *See id.* at 234 & n.3.

[32] *Id.* at 235.

[33] *Id.* at 238.

[34] *Id.* at 243.

[35] *Id.* at 242.

"[j]udicial review of the averments in the Commission's complaints should not be a means of turning prosecutor into defendant before adjudication concludes."[36] The Supreme Court required dismissal of Socal's request for review.[37]

The FERC orders at issue in the present petition for review lie on a continuum between the regulations considered in *Abbott Laboratories* and the agency complaint under scrutiny in *Standard Oil*. But on balance, FERC's orders alleging violations of the NGA and setting the matter for hearing before an ALJ are more analogous to the agency action in *Standard Oil*. FERC's order initiating administrative proceedings is not a definitive ruling or regulation. "The requirement that the reviewable order be 'definitive' in its impact upon the rights of the parties is something more than a requirement that the order be unambiguous in legal effect. It is a requirement that the order have some substantial effect on the parties which cannot be altered by subsequent administrative action."[38] We note that after FERC's allegations that ETP had violated the NGPA were heard by an ALJ, the ALJ dismissed the primary undue-discrimination claim pending against ETP. FERC then reached a settlement with ETP regarding the NGPA issues. ETP may similarly prevail on the merits in the administrative action regarding the NGA, thereby mooting its judicial challenge. The possibility that ETP may prevail "warrants the

---

[36] *Id.* at 243.

[37] *Id.* at 247.

[38] *Atlanta Gas Light Co. v. Fed. Power Comm'n*, 476 F.2d 142, 147 (5th Cir. 1973); *see also Pennzoil Co. v. FERC*, 742 F.2d 242, 245 (5th Cir. 1984) ("We are also disinclined to review the Commission's order at this point since it has no direct and immediate impact on Pennzoil that cannot be altered by subsequent Commission action . . . .").

requirement that [ETP] pursue administrative adjudication, not shortcut it."[39] At this juncture, no statutory violation has been finally determined by FERC.

ETP's primary argument is that it should not be required to participate in adversary proceedings before an ALJ. The Supreme Court's reasoning in *Standard Oil* counsels that we reject this contention as well. FERC's intermediate decision has no "legal force or practical effect" on ETP's daily business other than the disruption caused by litigation.[40] As the Supreme Court has stated, while "the burden of defending [an administrative] proceeding [would] be substantial[,] . . . the expense and annoyance of litigation is part of the social burden of living under government."[41] "Although this burden certainly is substantial, it is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action."[42] Here, ETP's legitimate concern about expected litigation expenses "does not constitute irreparable injury"[43] that would be one factor in determining if an order should be accorded finality.[44] ETP also contends that the rules of evidence are more

---

[39] *See Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 292 (5th Cir. 1999); *see also Standard Oil*, 449 U.S. at 244 n.11 ("[O]ne of the principal reasons to await the termination of agency proceedings is 'to obviate all occasion for judicial review.'").

[40] *See Standard Oil*, 449 U.S. at 243.

[41] *Id.* at 244 (internal quotation marks omitted).

[42] *Id.* at 242.

[43] *Id.* at 244 (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)).

[44] *See Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 226 (5th Cir. 1994) ("The obligation to defend oneself before an agency is not the type of obligation that creates final agency action.").

relaxed in administrative proceedings than they would be in a de novo review in district court. However, if ETP is correct that it is entitled to de novo review of any finding by FERC that the NGA has been violated and de novo review of any penalty assessed, then ETP would be entitled to de novo review. The proceedings before an ALJ, including any evidentiary rulings or determinations, would not bind the district court.

ETP argues that our decision to review an interlocutory decision in *Mississippi Valley Gas Co. v. FERC*[45] governs the instant case. In *Mississippi Valley*, the Commission accepted a proposed rate increase for natural gas transportation costs over objection by Mississippi Valley that such a rate increase would violate a prior stipulation in rate proceedings.[46] Applying the factors for assessing ripeness found in *Abbott Laboratories*, we concluded that FERC's decision was ripe.[47] With regard to the third factor in *Abbott Laboratories*, which is that the impact of the order must be definitive and have some substantial effect on the parties that cannot be altered by subsequent administrative action, our reasoning in *Mississippi Valley* may not be entirely clear. However, we did not rely on the burden and costs of proceeding before an ALJ to establish the third factor as ETP does in the present case.

ETP relies on our recent opinion in *Texas v. United States*.[48] In *Texas*, the Secretary of the Interior promulgated regulations pertaining to Indian gaming

---

[45] 659 F.2d 488 (Former 5th Cir. Oct. 1981).

[46] *Id.* at 496.

[47] *Id.* at 498-99.

[48] 497 F.3d 491 (5th Cir. 2007), *cert. denied*, 129 S. Ct. 32 (2008).

procedures that applied if a state asserted sovereign immunity in a suit by an Indian tribe in which the tribe alleged that the state had failed to negotiate in good faith a voluntary compact governing the conduct of gaming activities.[49] We held that the challenged regulations were final agency action and therefore reviewable because they were "final rules that were promulgated through a formal, notice-and-comment rulemaking process after announcement in the *Federal Register*."[50] This court reasoned that the state of Texas would otherwise be forced to choose between two options: "participate in an allegedly invalid process that eliminates a procedural safeguard promised by Congress, or eschew the process with the hope of invalidating it in the future, which risks the approval of gaming procedures in which the state had no input."[51]

We perceive a difference between a challenge to final regulations that apply to all in a regulated industry after notice and hearing and a challenge to an order requiring an evidentiary hearing in a particular case. We recognize that in the present case the Commission has construed the NGA as bestowing the authority to order adversary proceedings before an ALJ in determining whether the NGA has been violated and if a penalty should be imposed. Presumably the Commission will take the same position in other similar cases. But a position taken by FERC on a case-by-case basis is not the equivalent of exercising its rulemaking authority to adopt generally applicable final rules after notice and comment.

---

[49] *See id.* at 494.

[50] *Id.* at 499.

[51] *Id.*

FERC acknowledges that in certain contexts our circuit has recognized "extraordinary exceptions" to the requirement that an order have finality. We have said in applying the APA that "[a] claim that an agency action is in plain contravention of a statutory mandate, however, may present one of the extraordinary exceptions to the finality requirement."[52] Assuming, without deciding, that we would employ an "extraordinary exception" of this nature in determining whether a party has been aggrieved within the meaning of § 19(b) of the NGA,[53] we can discern no plain statutory mandate that forecloses FERC from ordering an adversary hearing before an ALJ prior to assessing a civil penalty under § 22 of the NGA.[54] We emphasize that we are not determining that FERC *is* authorized to order such a proceeding. We conclude only that "[t]he statutory scheme is less than clear on this matter."[55]

Section 22(b) of the NGA provides that a penalty proposed by the Commission for a violation of the Act shall be assessed "after notice and opportunity for public hearing."[56] The term "public hearing" is not defined in the NGA. Our conclusion that a particular type of hearing is not "plainly mandated"

---

[52] *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) (citing *Coca-Cola Co. v. FTC*, 475 F.2d 299, 303 (5th Cir. 1973)).

[53] 15 U.S.C. § 717r(b).

[54] *Id.* § 717t-1.

[55] *Nat'l Indep. Coal Operators' Ass'n v. Kleppe*, 423 U.S. 388, 393 n.3 (1976); *see id.* (construing the Federal Coal Mine Health and Safety Act of 1969, comparing § 106 of the Act with § 109(a), and concluding that it was unclear whether a "trial *de novo* is available on the factual basis of the violation as well as on the amount of the penalty").

[56] 15 U.S.C. § 717t-1(b).

in § 22(b) is informed by our decision in *Buttrey v. United States*,[57] in which this court determined the meaning of "after notice and opportunity for public hearings" as used in § 404 of the Clean Water Act, 33 U.S.C. § 1344.[58] The issue in *Buttrey* was whether this phrase, when used in this particular section of the Clean Water Act, triggered "[t]he formal trial-type hearing procedures . . . set out in sections 7 and 8 of the Administrative Procedure Act, 5 U.S.C. §§ 556–557 (1976)."[59] This court recognized that there are "many different kinds of 'hearing,' and resolution of the issue must turn on 'the substantive nature of the hearing Congress intended to provide.'"[60] We first acknowledged that three other circuit courts had concluded that identical language in another section of the Clean Water Act required trial-type hearings:

> Three other circuits have construed virtually identical language in section 402 of the Clean Water Act, 33 U.S.C. § 1342(a)(1) (1976) ("after opportunity for public hearing"), to require a trial-type hearing, *Seacoast, supra*; *Marathon Oil Co. v. Environmental Protection Agency*, 564 F.2d 1253 (9th Cir. 1977); *United States Steel Corp. v. Train*, 556 F.2d 822 (7th Cir. 1977). The question, then, is whether section 402 can be distinguished from section 404, despite the similarity of language and despite the fact that both sections are part of the same statutory scheme.[61]

---

[57] 690 F.2d 1170 (5th Cir. 1982).

[58] *Id.* at 1174.

[59] *Id.*

[60] *Id.* (quoting *Seacoast Anti-Pollution League v. Costle*, 572 F.2d 872, 876 (1st Cir. 1978)).

[61] *Id.* at 1174-75.

But we examined the legislative history of § 404 of the Clean Water Act and concluded that Congress did not intend for the trial-type procedures of the APA to apply to proceedings under § 404.[62]

With regard to the NGA, courts may ultimately construe "public hearing," as used in § 22(b)[63] to exclude trial-type hearings before an ALJ. Or they may not. The statute is not "plain" in this regard. We cannot say at this juncture that the Commission's order requiring a hearing before an ALJ is a "plain contradiction of a statutory mandate." Accordingly, we do not recognize an "exception" to the "final order" factor that is part of our precedent regarding ripeness.

## IV

ETP contends that FERC's orders merit review under the collateral-order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*[64] ETP argues that FERC's issuance of the hearing order "fall[s] in that small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."[65] Faced with a similar argument, the Supreme Court in *Standard Oil* held that *"Cohen* does not avail Socal. . . . [T]he issuance of the

---

[62] *Id.* at 1175-76.

[63] 15 U.S.C. § 717t-1(b).

[64] 337 U.S. 541 (1949).

[65] *Id.* at 546.

complaint averring reason to believe is a step toward, and will merge in, the [FTC's] decision on the merits. Therefore, review of this preliminary step should abide review of the final order."[66] The FERC's order requiring a hearing before an ALJ is more than a complaint that alleges "reason to believe" there have been statutory violations, but that order will merge into any final decision on the merits that FERC may issue.

The Supreme Court did not expressly consider in *Standard Oil* whether the collateral-order doctrine is applicable in construing statutes other than 28 U.S.C. § 1291, which governs certain appeals from district courts to the courts of appeals. It is frequently said that "[t]he collateral order doctrine, identified with *Cohen v. Beneficial . . .*, is 'best understood not as an exception to the "final decision" rule laid down by Congress in § 1291, but as a "practical construction" of it.'"[67] Even assuming that the collateral order doctrine can also be considered a practical construction of § 19(b) of the NGA, the Supreme Court has emphasized that the doctrine is a narrow one.[68] The Supreme Court's demarcations of orders coming within the collateral order doctrine and those outside its boundaries lead to the conclusion that the orders presently under consideration should not be accorded finality. The Supreme Court explained in *Will v. Hallock* that "'almost every pretrial or trial order might be called

---

[66] *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 246 (1980).

[67] *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (citation omitted)).

[68] *See id.* at 350 ("[W]e have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope. . . . And we have meant what we have said; although the Court has been asked many times to expand the 'small class' of collaterally appealable orders, we have instead kept it narrow and selective in its membership.").

"effectively unreviewable" in the sense that relief from error can never extend to rewriting history.'"[69] The "something further" that distinguishes orders "merit[ing] appealability under *Cohen*" from those that do not "boils down to 'a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement.'"[70] The Court identified a number of orders that do not merit interlocutory review[71] and concluded in *Will v. Hallock* that a refusal to apply the judgment bar of the Federal Tort Claims Act is not an appealable collateral order.[72] The Court explained that "the concern behind [res judicata and the judgment bar of the Federal Tort Claims Act] is . . . avoiding duplicative litigation, 'multiple suits on identical entitlements or obligations between the same parties.'"[73] These goals, while important, were not of the same ilk as the concerns that have led the Court to recognize sparingly a right to immediate appellate review.

ETP seeks to avoid proceedings before an ALJ, which ETP contends are not authorized by the NGA and may be largely duplicated in a de novo trial

---

[69] *Id.* at 351 (quoting *Digital Equip.*, 511 U.S. at 872).

[70] *Id.* at 351-52 (quoting *Digital Equip.*, 511 U.S. at 878-79 and citing *Lauro Lines, S.R.L. v. Chasser*, 490 U.S. 495, 502 (1989) (Scalia, J., concurring) ("The importance of the right asserted has always been a significant part of our collateral order doctrine.")).

[71] *See id.* at 351 (observing that immediate vindication through appeal is unavailable for "claims that the district court lacks personal jurisdiction, that the statute of limitations has run, that the movant has been denied his Sixth Amendment right to a speedy trial, that an action is barred on claim preclusion principles, that no material fact is in dispute and the moving party is entitled to judgment as a matter of law, or merely that the complaint fails to state a claim" (quoting *Digital Equip.*, 511 U.S. at 873)).

[72] *Id.* at 354-55.

[73] *Id.* (quoting 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4402 (2d ed. 2002) (internal quotation marks omitted)).

before a district court if ETP's construction of the NGA ultimately prevails. The value of protecting a party such as ETP from duplicative proceedings appears no greater than the value of protecting against unnecessary or duplicative proceedings resulting from a district court's denial of any of the numerous motions identified by the Supreme Court in *Will v. Hallock*.[74] The collateral order doctrine should not be applied in this case.

## V

As we have noted, FERC's order denying rehearing expressed its view that any finding it might make that ETP violated the NGA is to be reviewed by a court of appeals under § 19(b) of the NGA and is not subject to de novo review in a district court under §§ 22 and 24 of the NGA. A district court, FERC posits, only has jurisdiction of an action brought by the Commission to collect a penalty to enjoin a violation of the NGA, and "the standard of review for an NGA collection is substantial evidence," the Commission maintains. We do not address today whether these views are correct. The proper construction of the NGA must await resolution when and if the Commission determines that the NGA has been violated and assesses a penalty. As we have said, the NGA's statutory scheme is far from clear. Congressional action to chart with clarity the desired course of proceedings in this regard would not be unwelcome.

*    *    *

Because we have concluded that the issues presently before us are not ripe for adjudication, ETP's petition for review is DISMISSED.

---

[74] *See id.* at 351.