# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 18, 2022

Lyle W. Cayce
Clerk

No. 22-60225

Midship Pipeline Company, L.L.C.,

*Petitioner*,

*versus*

Federal Energy Regulatory Commission,

*Respondent*.

Petition for Review of an Order of the
Federal Energy Regulatory Comm.
Agency No. 177 FERC 61,186
Agency No. 178 FERC 62,100
Agency No. 178 FERC 61,202

Before Higginbotham, Haynes, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

Midship Pipeline Company, L.L.C. challenges part of a Federal Energy Regulatory Commission (FERC) order directing an administrative law judge to determine the "reasonable cost" for Midship to complete remediation activities at Sandy Creek Farms in Oklahoma. The FERC, like all administrative agencies, must ground its actions "in a valid grant of authority from Congress," *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000), and Midship contends that the

No. 22-60225

FERC's governing statutes do not grant the agency authority to determine "reasonable cost" of remediation. Thus, Midship asserts the FERC's order is *ultra vires*. The FERC counters that this issue is not ripe for appeal, and, in any event, its order is entitled to deference. We conclude this dispute is ripe for our review and vacate the provision of the FERC's order requiring a determination of "reasonable cost." We otherwise remand for further proceedings.

## I.

On August 13, 2018, the FERC issued a certificate order under the Natural Gas Act (NGA) allowing Midship to construct and operate a 200-mile natural gas pipeline crossing privately held land in Oklahoma. 164 F.E.R.C. ¶ 61,103. Midship's certificate, like most issued under the NGA, contained requirements related to rates, environmental analyses, and restoration of affected land. *Id.*

Midship completed the pipeline in March 2020. 174 F.E.R.C. ¶ 61,220, 62,111. It then put the pipeline in operation and proceeded to restore land impacted by the construction. *Id.* A year later, the FERC directed Midship "to take immediate action to remedy unresolved restoration issues on certain landowner tracts." *Id.* at 62,110. This included "[c]orrect[ing] ponding, restor[ing] preconstruction contours," and "[r]emov[ing] known construction debris" on property held by Sandy Creek. *Id.* at 62,113. The FERC noted that it had previously directed Midship to address these issues, *id.* at 62,113 n.1, and recommended that Midship and the landowners negotiate a settlement through the FERC's Dispute Resolution Service, *id.* at 62,112. The FERC caveated this suggestion by

2

No. 22-60225

acknowledging that if negotiations failed it lacked the authority to require Midship to compensate the landowners, *id*. at 62,112 n.13.[1]

After several months, Sandy Creek and Midship were unable to reach a settlement.  177 F.E.R.C. ¶ 61,186.  Sandy Creek filed a statement before the FERC indicating that, although its land still needed to be restored, it did not want Midship to remediate the land because Midship's continued presence would lead to "irreparable impacts."  *Id*.  Instead, Sandy Creek preferred a settlement that would compensate Sandy Creek for restoring its land itself. *Id*.

In response, the FERC entered another order recognizing that Midship and Sandy Creek remained at an impasse.  *Id*.  It found that "despite general agreement as to the proper scope of the restoration work needed . . . , Midship and Sandy Creek Farms have not been able to agree on a specific plan or cost thereof."  *Id*. at *4.  The FERC then appointed an administrative law judge (ALJ) to resolve two questions: "(1) the methods and scope of work activities remaining in order to restore the Sandy Creek Farms property in accordance with the Certificate Order . . . and (2) the reasonable cost to complete such activities."  *Id*.  The FERC again acknowledged that it could not award damages but stated that "developing a record as to the necessary measures and their cost will assist [the FERC] in evaluating what further remediation is required and what further steps to take to resolve the issues here."  *Id*.

---

[1] The landowners filed a motion for rehearing and asked the FERC to retract its statement about ordering compensation.  But the FERC reiterated that it had "no authority to direct payment of compensation for damages . . . .  Should Landowners seek compensation from Midship, Landowners may pursue these claims in the appropriate state court."  175 F.E.R.C. ¶ 61,145, 61,932.

No. 22-60225

Midship filed a petition for rehearing, asserting that the FERC lacked authority to determine the "reasonable cost" of remediation. 178 F.E.R.C. ¶ 61,202, *2. The FERC denied Midship's petition and reiterated the rationale from its prior order. *Id.* at *3. Roughly three weeks later, Midship filed a request for a stay with the FERC and a petition for review before this court challenging the directive that the ALJ determine the reasonable cost of remediation. Shortly thereafter, while its stay motion before the FERC remained pending, Midship requested a stay from this court pending appeal.

The FERC denied Midship's stay motion, but shortly after, we granted Midship a stay of the challenged portion of the FERC's order. *Midship Pipeline Co., L.L.C. v. Fed. Energy Regul. Comm'n*, No. 22-60225, slip. op. at 1 (5th Cir. May 25, 2022) (per curiam order). We also expedited the appeal. *Id.* at 5. Meanwhile, the remainder of the order is in effect, and proceedings before the ALJ are ongoing.

## II.

The NGA states that:

> [a]ny party to a proceeding under this chapter aggrieved by an order issued by [the FERC] in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business.

15 U.S.C. § 717r(b). In reviewing FERC orders pursuant to § 717r(b), we also apply the overarching appellate framework of the Administrative Procedure Act (APA), 5 U.S.C. § 701. *El Paso Elec. Co. v. Fed. Energy Regul. Comm'n*, 832 F.3d 495, 503 (5th Cir. 2016) (citing *La. Pub. Serv. Comm'n v. Fed. Energy Regul. Comm'n*, 771 F.3d 903, 909 (5th Cir. 2014)).

4

No. 22-60225

## A.

As threshold matters, the FERC first argues that this dispute is not ripe for review.  Next, if it is, the FERC contends its interpretation of the NGA ought to be accorded deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

## 1.

Whether an issue is ripe for appeal turns on "(1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding court consideration."  *Gulfport Energy Corp. v. Fed. Energy Regul. Comm'n*, 41 F.4th 667, 679 (5th Cir. 2022) (quoting *Cochran v. Sec. & Exch. Comm'n*, 20 F.4th 194, 212 (5th Cir. 2021)).  "A matter is fit for review when it presents pure legal questions that require no additional factual development."  *Id.* (citing *Cochran*, 20 F.4th at 212).  "To assess hardship, we examine the effect of the agency decision on the petitioner"; if the effect "is 'sufficiently direct and immediate,' review is appropriate."  *Id.* (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 152 (1967)); *see Energy Transfer Partners, L.P. v. Fed. Energy Regul. Comm'n*, 567 F.3d 134, 139 (5th Cir. 2009) (discussing "factors set forth by the Supreme Court in *Abbott Laboratories*").

The FERC contends that the challenged order is not ripe for review because it is not a "final agency action" that carries a cognizable effect on Midship.  The FERC reasons that just as in *Energy Transfer Partners*, regardless of whether the order exceeded its authority, the ALJ or the FERC could eventually rule favorably to Midship, and Midship could appeal an adverse determination, such that the instant order has no binding effect.  We disagree.  "Our court has long recognized that [Section 717r(b)] does not require that an order be a 'final' one; rather, the inquiry is whether a party has been 'aggrieved' by an order of the [FERC]."  *Energy Transfer Partners*, 567 F.3d at 139 (citing *Atlanta Gas Light Co. v. Fed. Power Comm'n*, 476 F.2d

142, 147 (5th Cir. 1973)). "Questions of whether a petitioner is aggrieved and whether the case is ripe for review are often nestled in clusters of fact and circumstance unique to the case." *Brooklyn Union Gas Co. v. Fed. Energy Regul. Comm'n*, 190 F.3d 369, 374 (5th Cir. 1999). "A party has not been 'aggrieved' by a FERC decision unless its injury is 'present and immediate.'" *Id.* (quoting *Brooklyn Union Gas Co.*, 190 F.3d at 373). Simply put, a challenged order must be "definitive," and a party must be faced with some "substantial effect" caused by the challenged order that further action by the FERC cannot remedy. *Id.* (quoting *Atl. Gas Light Co.*, 476 F.2d at 147).

The FERC supports its position first by pointing to precedent indicating that orders that merely initiate agency proceedings are not ripe. *See, e.g.*, *TOTAL Gas & Power North America, Inc. v. Federal Energy Regulatory Commission*, 859 F.3d 325 (5th Cir. 2017); *Energy Transfer Partners*, 567 F.3d at 141; *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994); *Atlanta Gas Light*, 476 F.2d at 147. The FERC posits that this general rule should control because its order in this case has no substantial effect on Midship other than requiring Midship to participate in proceedings before the ALJ.

But the FERC overstates the applicability of the authority it offers. Some of the cases it cites weighed finality only under the APA's more general standards, not under the "aggrieved" standard utilized in the NGA or its predecessor statutes. *See Veldhoen*, 35 F.3d at 225; *accord Federal Trade Commission v. Standard Oil Co. of California*, 449 U.S. 232, 235–43 (1980). Others have little bearing because there were no FERC orders actually on review. *See TOTAL Gas & Power*, 859 F.3d at 328–32; *accord Fed. Power Comm'n v. Metro. Edison Co.*, 304 U.S. 375, 381–82 (1938). *Energy Transfer Partners*, perhaps a closer case, is also distinguishable because the underlying order in *Energy Transfer Partners* merely alleged preliminary findings of violations that framed subsequent adversarial proceedings. *See* 567 F.3d at

141–42.  In other words, the order at issue was akin to an initial pleading; it would have no lasting effect because the petitioners could disprove the preliminary findings alleged by FERC during the ensuing proceedings.  *Id.* (quoting *Standard Oil*, 449 U.S. at 243–44).

By contrast, the order Midship challenges requires an ALJ to make a definitive finding as to the "reasonable cost" of remediation.  177 F.E.R.C. ¶ 61,186 at *4.  Midship argues that the FERC lacks authority under the NGA to dictate remediation costs, or effectively order damages, such that the FERC's order is *ultra vires*—a "pure legal question[] that require[s] no additional factual development."  *Gulfport Energy Corp.*, 41 F.4th at 679; *cf. Cochran*, 20 F.4th at 212–13 (noting that forcing a litigant to appear in an unconstitutionally constructed forum is an injury sufficient to merit immediate review).  Moreover, once the "reasonable cost" of restoration is fixed by the ALJ, that fact would likely dictate the FERC's ultimate decision, even though Midship may have no chance to contest the FERC's decision on this basis—if, for example, the FERC never expressly referenced the "reasonable cost" finding in *its* ultimate order.  We conclude that the challenged order is thus both "fit for review," i.e., definitive, and in practical effect gives rise to hardship that is "sufficiently direct and immediate," i.e., has a substantial effect on Midship, to warrant review.  *Gulfport Energy Corp.*, 41 F.4th at 679 (quoting *Abbott Lab'ys*, 387 U.S. at 152); *Energy Transfer Partners*, 567 F.3d at 139; *see Atlanta Gas Light*, 476 F.2d at 148 (holding that an interim order allowing a gas company to reduce deliveries to another company was reviewable because the order was "definitive in its impact upon the rights of the parties and threaten[ed] irreparable harm").

No. 22-60225

**2.**

The FERC asserts that its determination that the NGA empowers it to establish the reasonable cost of remediation is entitled to deference under *Chevron*.[2]  "But before leaping into the *Chevron* two-step, we must determine whether the agency construction is of a form that warrants application of the framework at all."  *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 297 (5th Cir. 2022).  This means that we must first determine whether "'the agency interpretation claiming deference was promulgated in the exercise of [delegated] authority' to make rules carrying the force of law."  *Id.* (quoting *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001)).

Generally, formalized pronouncements of broad application, such as official rulemaking or adjudication, are entitled to *Chevron* deference.  *Mead Corp.*, 533 U.S. at 229–30.  By contrast, "fact-bound inquir[ies] into the application of a regulation to a particular party" or "individual, ad hoc determination[s]" are not.  *Gordon Plaza*, 25 F.4th at 297–98.  The order Midship challenges falls into the latter category.  After reciting the history of the dispute between Midship and Sandy Creek, the order stated:

> [D]espite general agreement as to the proper scope of the restoration work needed . . . , Midship and Sandy Creek Farms have not been able to agree on a specific plan or cost thereof.  Due to the impasse . . . the [FERC] finds the most efficient way to ensure the required restoration moves forward . . . is to establish procedures before an administrative law judge to determine:  (1) the methods and scope of work activities remaining in order to restore the Sandy Creek Farms property

---

[2] One treatise describes the *Chevron* doctrine as the notion that "[a] reviewing court should accord considerable weight to an executive department's construction of the statutory scheme it is entrusted to administer, and statutory interpretations by agencies with rulemaking powers deserve substantial deference."  2 Am. Jur. 2d *Administrative Law* § 469 (2022) (footnotes omitted).

> in accordance with the Certificate Order (tract GR-0338.000) and (2) the reasonable cost to complete such activities. While, as noted, the [FERC] cannot award damages, developing a record as to the necessary measures and their cost will assist us in evaluating what further remediation is required and what further steps to take to resolve the issues here.

177 F.E.R.C ¶ 61,186 at *4 (footnotes omitted). By its very terms, the order is a quintessential "individual, ad hoc determination," *Gordon Plaza*, 25 F.4th at 297–98, of "what further steps to take to resolve the issues here," 177 F.E.R.C ¶ 61,186 at *4, that is not entitled to *Chevron* deference.

Moreover, the FERC only supports its pronouncement that the NGA allows it to determine the "reasonable cost to complete" restoration efforts in circular fashion—by reciting the NGA. *See id.* at *4 n.26 (quoting 15 U.S.C. § 717m(a)). But merely quoting the statute to support an agency's reading of the same statute, to justify an ad hoc order no less, hardly "warrants application of the [*Chevron*] framework at all." *Gordon Plaza*, 25 F.4th at 297; *see also Mead*, 533 U.S. at 230 (noting that the "overwhelming number of our cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication") (footnote omitted).

Nor does weaker deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), salvage the FERC's reading of the NGA. This court accords *Skidmore* deference to "agency interpretations of statutes they administer that do not carry the force of law[.]" *Luminant Generation Co., L.L.C. v. EPA*, 675 F.3d 917, 928 (5th Cir. 2012) (citing *Mead*, 533 U.S. at 234–35). *Skidmore* deference is applied when an agency's non-authoritative determinations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Gordon Plaza*, 25 F.4th at 298 (quoting *Skidmore*, 323 U.S. at 140). The "fair measure of

deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Mead*, 533 U.S. at 228 (footnotes and citations omitted). The last factor, persuasiveness, is the touchstone in determining how much to defer to an agency interpretation. *Baylor Cnty. Hosp. Dist. v. Price*, 850 F.3d 257, 261–62 (5th Cir. 2012) (quoting *Skidmore*, 323 U.S. at 140); *Luminant Generation*, 675 F.3d at 928 (citing *Mead*, 533 U.S. at 228).

As noted, the FERC's reading of the NGA to allow it to determine "reasonable cost" of restoration is conclusory and grounded only on ad hoc reasoning that "developing a record as to the necessary measures and their cost will assist . . . in evaluating what further remediation is required and what further steps to take to resolve the issues" between Midship and Sandy Creek. 177 F.E.R.C ¶ 61,186, at *4. Given the lack of "thoroughness," *Mead*, 533 U.S. at 228 (quoting *Skidmore*, 323 U.S. at 140), and the dearth of explanatory reasoning, there is little, if anything, in the order to persuade us of the correctness of the FERC's interpretation of the NGA on this point. *See Gordon Plaza*, 25 F.4th at 298–99 (noting that an agency decision "lack[ing] the hallmarks of persuasion . . . is not entitled to *Skidmore* deference"). Accordingly, we afford no deference to the FERC's reading of the statute.

## B.

Satisfied that this dispute is ripe and that the FERC's interpretation of its underlying authority under the NGA is not subject to deference, we turn to the merits of Midship's appeal. Midship advances four arguments: (1) the NGA does not authorize the FERC to determine the reasonable cost of restoration; (2) the FERC lacks authority to order Midship to compensate

No. 22-60225

Sandy Creek; (3) any attempt by the FERC to order Midship to compensate Sandy Creek runs afoul of the Seventh Amendment and state law tort remedies; and (4) because the FERC cannot determine the reasonable costs of restoration, it cannot order an ALJ to do so. We need address only Midship's first argument, as it is dispositive.[3]

"Agencies have only those powers given to them by Congress, and 'enabling legislation' is generally not an 'open book to which the agency [may] add pages and change the plot line.'" *West Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2609 (2022) (quoting Ernest Gellhorn & Paul Verkuil, *Controlling Chevron Based Delegations*, 20 Cardozo L. Rev. 989, 1011 (1999)). Administrative agencies must ground their actions "in a valid grant of authority from Congress." *Brown & Williamson*, 529 U.S. at 161. To determine "the authority that Congress has provided," we examine an agency's authorizing statutes. *Nat'l Fed'n of Indep. Bus. v. Dep't of Labor, Occupational Safety & Health Admin.*, 142 S. Ct. 661, 665 (2022).

The FERC draws its authority to regulate Midship from the NGA. *See* 15 U.S.C. § 717. Specifically, the FERC is granted authority to:

> [i]nvestigate any facts, conditions, practices, or matters which it may find necessary or proper in order to determine whether any person has violated or is about to violate any provisions of this chapter or any rule, regulation, or order thereunder, or to

---

[3] We lack jurisdiction to consider Midship's second and third arguments because Midship did not raise them in its motion for rehearing before the FERC. *NICOR Expl. Co. v. Fed. Energy Regul. Comm'n*, 50 F.3d 1341, 1346–47 (5th Cir. 1995) (first quoting 15 U.S.C. § 717r(b); and then citing *Tennessee Gas Pipeline Co. v. Fed. Energy Regul. Comm'n*, 871 F.2d 1099, 1107 (D.C. Cir. 1989)) (stating that the courts of appeal lack jurisdiction to consider objections to Commission orders not raised on rehearing before the FERC). And because the FERC does not contend that it could order an ALJ to determine the reasonable costs of remediation even if the FERC lacks authority to do so itself, we need not address Midship's fourth issue.

aid in the enforcement of the provisions of this chapter or in prescribing rules or regulations thereunder, or in obtaining information to serve as a basis for recommending further legislation to the Congress.

*Id.* § 717m(a). Further, "[t]he [FERC] shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this chapter." *Id.* § 717o. Notably, the NGA is silent as to the FERC's power to determine costs (reasonable or otherwise) of restoration.

The FERC asserts that it needs to determine reasonable restoration costs in order to evaluate "what further remediation is required." It argues that "[t]he reasonable cost of restoration methods is information 'necessary or appropriate'" for the FERC to police Midship's compliance with its certificate order. At essence, the FERC's argument is that it has implied authority to establish the reasonable cost of restoration, derived from its express authority to regulate Midship through its certificate order. This argument is unavailing.

The FERC can certainly enforce the terms of a certificate order, as the NGA states. *Id.* § 717m(a). And it can determine when an entity violates, or is about to violate, one of its orders. *Id.* But, as the commissioner who dissented from the order denying Midship a stay aptly observed,

> [t]he relevant certificate terms specify only an outcome—meaning whether Midship has or will violate those terms turns only on one finding: have the required outcomes (restoration of preconstruction contours and removal of construction debris) been achieved. Put simply, did Midship complete its tasks or not. And while the [FERC] oversees the restoration to ensure compliance, the cost of completing such compliance tasks, or for that matter the specific method by which those tasks are completed . . . are irrelevant. [Using a] painting

> analogy, whether you paint the wall using a brush or a roller, and how much each method costs is of no concern to the [FERC] and lies outside [its] authority.

*Midship Pipeline Co., L.L.C.*, No. 22-60225, slip. op. at 3-4 (quoting 179 F.E.R.C. 61,096, at *4). Thus, the FERC's argument that it is "necessary" or "appropriate" under the NGA to "develop[] a record as to the necessary measures and their cost" in order to assist "in evaluating what further remediation is required," 177 F.E.R.C. ¶ 61,186 at *4, not only has no explicit support in the NGA's text but also lacks support in the context of this case. The first part of the FERC's order (determining "the methods and scope of [restoration] work activities remaining")—which Midship does not challenge—easily falls within the FERC's grant of authority from Congress. The second part (setting "the reasonable cost to complete such activities") does not.

We hasten to add that our decision today does not circumscribe the ALJ's ability to receive and consider *evidence* related to the cost or relative efficacy of competing methods of restoration as the ALJ fulfills the balance of the FERC's investigatory order. In other words, it is not taboo for a witness to mention the cost of competing remedial measures as a basis for recommending one or the other, and it is not out-of-bounds for the ALJ to consider such evidence in determining "the methods and scope of work activities remaining in order to restore the Sandy Creek Farms property" consonant with Midship's certificate order. 177 F.E.R.C. ¶ 61,186 at *4. Our holding is limited to proscribing the FERC's directive that the ALJ affirmatively determine "the reasonable cost to complete such activities," a power that the NGA does not confer upon the FERC.

## III.

"Agencies have only those powers given to them by Congress . . . ." *West Virginia*, 142 S. Ct. at 2609. The FERC's interpretation of the NGA to give the agency power to determine "the reasonable cost" of remediation efforts "change[d] the plot line" of its enabling legislation, *id.*, and was therefore erroneous. The FERC lacks such authority under the NGA, and it likewise lacked authority to order an ALJ to make such a determination indirectly. Accordingly, we VACATE that portion of the challenged order as *ultra vires*. The remainder of the order is REMANDED to the FERC for further proceedings.

VACATED IN PART; REMANDED.