Edwin L. COX et al., Petitioners,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.

No. 77–3493.

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1978.

Ross, Marsh & Foster, Bernard A. Foster, III, Washington, D. C., for petitioners.

Linda Elizabeth Buck, Washington, D. C., for State of Louisiana.

James R. Patton, David B. Robinson, Harry E. Barsh, Jr., Washington, D. C., for intervenor.

Robert R. Nordhaus, Gen. Counsel, F.E.R.C., Howard E. Shapiro, Sol., M. Frazier King, Jr., Atty., F.E.R.C., Washington, D. C., for respondent.

Frank X. Kelly, Washington, D. C., for Texas Gas Transmission Corp.

Before BROWN, Chief Judge, GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

Petitioners seek review of an order of the Federal Energy Regulatory Commission (FERC).[1]  The principal issue is whether substantial evidence supports the agency

---

1. The successor agency to the Federal Power Commission (FPC).

finding that petitioners delivered uncertificated gas in interstate commerce. Also at issue are whether FERC has authority to order a payback in kind of dedicated gas that was diverted from the interstate market and whether FERC abused its discretion in determining to reopen an earlier certification proceeding rather than to initiate a new certification proceeding. We conclude that substantial evidence supports the determination that petitioners delivered uncertificated gas in interstate commerce. We also find in these circumstances that FERC has authority to order a payback in kind of diverted gas and that the decision to reopen an earlier certification proceeding was not an abuse of discretion. Accordingly, we affirm.

Petitioners are royalty and working interest owners of a natural gas unit located in the Ramos Field, St. Mary Parish, Louisiana. Cox is the operator of the unit. When the unit was created 80% of the unit's estimated reserves ("80% gas") was subject to gas sales contracts with Texas Gas Transmission Corporation, a pipeline company operating in interstate commerce. The remaining 20% ("20% gas") was not subject to any gas sales contracts. Petitioners own interests in both portions of gas. At all relevant times the 80% gas has been certificated for sale in interstate commerce; the 20% gas never has been certificated. For six years following creation of the unit, Cox delivered all gas produced from the unit to Texas Gas, was paid for the full delivery, and distributed the sale proceeds not only to owners of interests in 80% gas but also to owners of interests in 20% gas. All interest owners accepted payments, including payments attributable to interests in 20% gas. Subsequently, Cox

entered a contract for the sale of 20% gas in intrastate commerce. After intrastate deliveries commenced Texas Gas sought a declaration prohibiting Cox from selling 20% gas in intrastate commerce before obtaining abandonment authorization from FERC.

■ In the proceedings before the Commission and on appeal Cox has argued that the unit was produced "out of balance." The argument, in essence, is that delivery of the full stream to Texas Gas for six years is treated as delivery of 80% gas, with the share of the 20% owners treated as "banked," or held in reserve for later compensatory delivery. Thus, Cox says, 20% gas never has been produced from the unit and hence has not been dedicated by delivery in interstate commerce. FERC ultimately rejected Cox's argument that it had been merely making out of balance delivery[2] and found that in fact Cox's sales to Texas Gas had been of 80% and 20% gas. FERC grounded its finding on the unusually lengthy duration of the alleged "out of balance" production, on the fact that during the alleged "out of balance" production no gas had been sold to any buyer other than Texas Gas, and on the distribution of sale proceeds to owners of 20% gas.[3]

■ Whether 20% gas was delivered in interstate commerce is a question of fact. Accordingly, the FERC finding is conclusive if supported by substantial evidence. 15 U.S.C. § 717r(b) (1976). In this case the undisputed facts include interstate delivery for a period of six years of 100% of the gas produced from the unit and concomitant payment to and acceptance of payments by interest owners in 20% gas as well as in 80% gas. These facts are substantial evidence

---

**2.** Because substantial evidence supports the FERC rejection of this argument, we need not decide whether, in light of *California v. Southland Royalty Co.*, —— U.S. ——, 98 S.Ct. 1955, 56 L.Ed.2d 505 (1978), the certification of the 80% gas impressed the entire unit with an interstate service obligation.

**3.** Cox has suggested that the distribution of sale proceeds of owners to 20% gas was prompted by an opinion of counsel that Louisiana law required such a distribution. The re-

quirements of Louisiana law, however, have not been established at any stage of these proceedings. While we do not doubt the intentions of petitioners to comply with the requirements of state law, those intentions, whether or not based on accurate interpretation of state law cannot be regarded as dispositive of the question whether 20% gas was delivered in interstate commerce. *Cf. Louisiana Land and Exploration Co. v. FERC*, 574 F.2d 204 (CA5, 1978).

that renders conclusive the FERC finding that 20% gas as well as 80% gas was delivered in interstate commerce.[4]

Cox argues that the intent of the interest owners controls the extent of the dedication that results from a full well stream delivery pursuant to an alleged "out of balance" production plan. In support of this argument Cox cites a subsequent FERC decision that an "out of balance" delivery had not constituted a dedication of noncertificated gas. "Order Granting Rehearing" issued November 4, 1977, and "Order Denying Rehearing" issued January 3, 1978, in *Wise Oil Co.*, Docket No. CI 76–704, *appeal docketed, Wise Oil Co. v. FERC*, No. 78–1026 (CADC, January 10, 1978). We do not regard the cited orders as critical to a disposition of the issue before this court. In *Wise Oil Co.* the owners of interests in noncertificated gas refused payments proffered by the operator after full well stream delivery in interstate commerce. To whatever extent the intentions of the interest owners might be relevant to whether noncertificated gas has been delivered in interstate commerce, the interest owners' refusal of the payments proffered provides ample ground for concluding that the FERC decision in those proceedings is not inconsistent with the FERC decision in the case at bar.

 Having found that petitioners sold uncertificated 20% gas in interstate commerce in violation of the Natural Gas Act, FERC held that the subsequent diversion of this gas to the intrastate market constituted an unauthorized abandonment. Accordingly, FERC ordered petitioners to return diverted gas in kind to the interstate market. Petitioners attack this remedy as an unauthorized penalty. This court has held that the Natural Gas Act empowers the Commission, in fashioning a remedy for unauthorized abandonment of service, to restore the status quo ante by ordering dollar refunds. *Mesa Petroleum Co. v. FPC*, 441 F.2d 182 (CA5, 1971). In another context

the Supreme Court has approved FPC orders requiring producers to refund with interest amounts collected in excess of just and reasonable rates. *United Gas Improvement Co. v. Callery Properties*, 382 U.S. 223, 86 S.Ct. 360, 15 L.Ed.2d 284 (1965). The Court approved the interest provision of the refund order as an appropriate means of preventing unjust enrichment. In this case the payback in kind similarly prevents unjust enrichment and also requires petitioners, who violated the Act, to bear the burden of post-violation increases in the price of natural gas. Accordingly, the payback in kind remedy is equitable, reasonable, and within the authority of FERC.

 The argument that FERC lacks authority to reopen the original 80% gas certification proceeding is without merit. That FERC elected to reopen a prior certification proceeding rather than to initiate a new one is not an abuse of discretion.

AFFIRMED.

---

4. Cox has suggested that FERC gave undue weight to a finding that a witness for Cox was not credible. The FERC order on rehearing, however, states that the credibility of the witness was not determinative of the result, and we perceive nothing in the record that indicates that FERC attached inappropriate significance to the conclusion that the witness was not credible.