**COASTAL OIL & GAS CORPORATION,
Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**No. 84–4504.**

United States Court of Appeals, Fifth Circuit.

Feb. 18, 1986.

Ross, Marsh & Foster, Bernard A. Foster, III, William R. Mapes, Jr., Washington, D.C., for petitioner Coastal Oil & Gas Corp.

Jerome M. Feit, Solicitor, F.E.R.C., Washington, D.C., Joseph Davies, for respondent F.E.R.C.

Mark E. Headicke, William V. Allison, Winter Park, Fla., for intervenor Florida Gas Trans. Co.

Before CLARK, Chief Judge, and BROWN and JOHNSON, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In this appeal, we must determine whether natural gas is "dedicated" to interstate commerce even when the underlying contracts for the interstate sale of the gas contain a clause under which a producer is excused from connecting a well to the relevant interstate pipeline if such connection would be unprofitable. If we decide that the gas was dedicated to interstate commerce then we must also inquire into the remedy fashioned by the Federal Energy Regulatory Commission (FERC) to address the illegal *intrastate* sale of the dedicated gas.

The Commission ruled that the relevant gas was dedicated to interstate commerce and ordered Coastal Oil and Gas Corporation (Coastal) to refund to the *interstate* purchaser (Florida Gas Transmission Company (FGT)) all the revenues which Coastal had received from the illegal *intrastate* sale, plus interest.

We affirm the Commission on the dedication issue and thereby hold that the gas was dedicated to interstate commerce notwithstanding the presence of the so-called "economic connection clause" in the underlying sales contract between Coastal and FGT.

We also hold, however, that the remedy fashioned by the Commission was an abuse of the agency's discretion as it constituted an unauthorized penalty under established precedent in this Circuit. We therefore remand to the Commission with instructions to fashion a remedy in accordance with this opinion.

### Gas War

On November 1, 1958, Coastal entered into a contract to sell natural gas to FGT.[1] The contract covered gas produced from four specified offshore tracts in Aransas Bay, Aransas County, Texas. The contract contained an "economic connection clause" under which Coastal was excused from connecting any well to FGT's pipeline if such connection would be unprofitable.[2] In 1959, Coastal applied to FERC (at that time known as the Federal Power Commission) for a certificate of public convenience and necessity authorizing Coastal to make interstate sales of gas to FGT pursuant to the terms of the 1958 contract.[3] On November 2, 1961, the Commission issued a

---

1. "Coastal" and "FGT" will also be used to refer to the predecessors in interest of each company, respectively.

2. The relevant portion of the 1958 contract is Article I, Section 2(a), which provides:
   Seller agrees to complete the construction of such facilities, if any, as may be necessary to enable seller to deliver at the point of delivery hereinafter specified, the quantities of gas contemplated by this Agreement by the date Buyer completes its facilities necessary

to enable Buyer to receive delivery of such gas; provided, however, that nothing herein contained shall be construed as obligating Seller to connect any well which in Seller's opinion, reasonably exercised, would be unprofitable to Seller.

3. Under § 7(c) of the Natural Gas Act, 15 U.S.C. 717f(c), natural gas producers who intend to sell gas to pipelines for resale in interstate commerce must first obtain a certificate of public convenience and necessity from FERC.

temporary certificate for the sale of the gas from the four tracts; on June 23, 1964, the Commission issued a permanent certificate for such sale.

Interstate sales of natural gas to FGT were made from three of the tracts beginning in 1962. On July 29, 1965, Coastal began delivering natural gas produced from the fourth tract (Tract 120) to Lo-Vaca Gas Gathering Company (Lo-Vaca), an *intrastate* pipeline and wholly owned subsidiary of Coastal. Beginning in September of 1965 and continuing through 1976, certain Coastal internal documents reflected at least a concern that the gas from Tract 120 had been "dedicated" for sale to FGT in interstate commerce. At no time during this period did Coastal file for abandonment with the Commission as required by § 7(b) of the Natural Gas Act[4] before "dedicated" gas can be sold intrastate. In April, 1977, an attorney for Coastal advised Coastal that the gas in Tract 120 appeared to have been dedicated by the 1958 contract and suggested filing for abandonment. Coastal did so but continued to make intrastate sales to Lo-Vaca until 1979, when the well on tract 120 was depleted.

In 1982, FERC conducted an investigation into Coastal's sales practices and ordered a hearing to determine whether Coastal had violated the Natural Gas Act by reason of these *intrastate* sales to Lo-Vaca. The ALJ concluded that the gas from Tract 120 had been dedicated to interstate commerce and that Coastal had violated § 7(b) of the Natural Gas Act by selling the gas intrastate without first obtaining authorization from FERC to abandon interstate service. The ALJ ordered Coastal to pay back to FGT the amount of gas which it sold from Tract 120 to the intrastate market. This payback was ordered to be made at the 1958 contract price which Coastal estimated would cost about $6 million.

The Commission affirmed the ALJ on the "dedication" issue but altered the remedy. The Commission considered three alternatives to the gas payback remedy ordered by the ALJ. These alternatives were:

(1) Require Coastal to refund to FGT the amount (plus interest) FGT had to pay for volumes of natural gas to replace the volumes it should have received from Coastal under the 1958 contract. This amount was calculated to be $918,947. This figure includes interest as of December 31, 1982.

(2) Require Coastal to refund to FGT the revenues received by Coastal in excess of what Coastal would have received had it made the sales to FGT pursuant to the 1958 contract. The excess revenues were computed to be $902,126. With interest computed through December 31, 1982, this figure becomes $1,885,104.

(3) Require Coastal to refund to FGT all the revenues received from the illegal intrastate sales. This computed to $1,155,171; with interest computed through December 31, 1982, this remedy totaled $2,559,146.

Thus, remedy #1 represents the injury to FGT's customers; remedy #2 represents Coastal's unjust enrichment; and remedy #3 constitutes all the revenues received through the sale of the gas in intrastate commerce. The Commission imposed the third remedy, believing that this was the only alternative which would effectively deter future violations. On September 21, 1984, Coastal paid FGT $3,099,144, which represents the total revenues from its intrastate sales plus interest accrued until that date, in compliance with the Commission's refund order.

### *This is Dedicated to ...*

According to § 7(b) of the Natural Gas Act, once gas is dedicated to interstate commerce, a seller may not cease interstate sales without obtaining permission from the Commission to abandon those sales. 15 U.S.C. 717f(b). *See United Gas Pipeline Co. v. McCombs,* 442 U.S. 529, 99 S.Ct.

---

4. 15 U.S.C. 717f(b).

2461, 61 L.Ed.2d 54 (1979). Furthermore, the Supreme Court has ruled that the initiation of interstate service pursuant to a certificate dedicates all fields subject to that certificate. *McCombs,* 442 U.S. at 542, 99 S.Ct. at 2469, 61 L.Ed.2d at 66; *California v. Southland Royalty Co.,* 436 U.S. 519, 525, 98 S.Ct. 1955, 1958–59, 56 L.Ed.2d 505, 511 (1978). Here, Coastal began interstate sales of gas in 1962 from three of the four tracts covered by the certificate.

Coastal's theory is that the certificates dedicated only the gas which was subject to the underlying sales contract and that the 1958 contract with FGT never dedicated the gas from Tract 120 in the first place. According to Coastal, the contract only dedicated gas produced from wells which could be economically (or profitably) connected to FGT's pipeline. The well on Tract 120, it is alleged, could not be profitably connected to FGT's system. In other words, Coastal claims that the "economic connection clause" preconditioned the dedication.

We believe that Coastal's argument misinterprets the 1958 contract. A plain reading of the contract indicates that it did not condition the dedication of the gas on the profitability of connecting Coastal's wells to FGT's pipeline. Rather, the contract covered *all* the gas and the "economic connection clause" affected only the obligation of Coastal to construct a facility for the *delivery* of the gas to FGT's pipeline.[5] Therefore, the Commission correctly ruled that the "economic connection clause" pertained only to the *delivery* of the gas and not to its *dedication* to interstate commerce. Consequently, the relevant gas remained dedicated in the absence of a Commission authorization of abandonment.

■ Coastal's theory also misconstrues the meaning of "dedication". Under the Natural Gas Act, the "dedication" of gas to the interstate market does not effect a gift or sale of that gas, but only changes its regulatory status. *California v. South-*

*land Royalty Co.,* 436 U.S. at 527, 98 S.Ct. at 1960, 56 L.Ed.2d at 512–13. Thus, there is a distinction between "dedication" and "sale", and the Supreme Court has found that underlying sales contracts do not control the "dedication" determination. *See Southland Royalty,* 436 U.S. at 525–27, 98 S.Ct. at 1958–60; *Sunray Mid-Continent Oil Co. v. Federal Power Commission,* 364 U.S. 137, 80 S.Ct. 1392, 4 L.Ed.2d 1623 (1960). The obligation to continue interstate service despite contract provisions is essential to effectuate the purposes of the Act. If "dedication" depended on contractual arrangements, producers and pipelines would be free to make arrangements that would circumvent the ratemaking and supply goals of the statute. *Southland Royalty,* 436 U.S. at 526, 98 S.Ct. at 1959, 56 L.Ed.2d at 511.

■ The ALJ's decision in this case, which was affirmed by the Commission, comports with the Supreme Court view as he based his ruling on a finding that a certificate does not incorporate contract provisions inconsistent with the purposes of the Natural Gas Act. One of the purposes of § 7(b) of the Act is to allow the Commission, following certification of the sale of gas in interstate commerce, to review any future abandonment of that sale. This is the means by which the Commission may evaluate how such a proposed abandonment affects the availability and flow of gas sold in interstate commerce. If the "economic connection clause" is construed in accordance with Coastal's wishes, the Commission would be hampered if not completely foreclosed from performing its statutory responsibility under § 7(b). Moreover, such a contract provision, if given the meaning urged by Coastal, would give producers the discretion to delete new wells from areas subject to an interstate contract after gas has begun to flow pursuant to the contract. In this way the producer would be unchecked in his ability to substantially affect the flow of gas in inter-

---

5. The relevant portion of the 1958 contract is Article I, Section 2(a), which is set forth in note

*2 supra.*

state commerce. This is precisely the concern expressed by the Supreme Court in *Southland Royalty,* and consequently, we hold that Coastal's interpretation of the relevant contractual provision is inconsistent with the purposes of the Natural Gas Act. The certificate, therefore, cannot be deemed to have incorporated a contract provision which preconditions "dedication" on the economic feasibility of delivery.

■ Finally, there is considerable evidence in this case that the contracting parties (Coastal and FGT) in no way believed in 1958 that the "economic connection clause" would have the meaning now urged by Coastal. In fact, Coastal's internal memoranda indicate that this interpretation was a new theory dreamed up by its counsel as recently as 1980. Moreover, there are all kinds of internal documents in evidence revealing that Coastal and its counsel believed as early as 1965 that the natural gas in Tract 120 was dedicated to interstate commerce. In a nutshell, whether we look at this issue as a matter of contract principles or a matter of statutory gas law, we hold that the gas in Tract 120 was dedicated to interstate commerce. Therefore, Coastal illegally sold the gas intrastate by not first obtaining Commission authorization to abandon interstate service.

### Choosing a Remedy

■ Coastal argues that the remedy imposed by the Commission (disgorging all the revenues from the intrastate sales) constitutes a "penalty" and is therefore an abuse of the Commission's discretion. It is well-settled that the Natural Gas Act does not give the Commission the authority to impose civil penalties. *Southern Union Gas Co. v. FERC,* 725 F.2d 99, 102 (10th Cir.1984); *see also Mesa Petroleum Co. v. Federal Power Commission,* 441 F.2d 182 (5th Cir.1971). We can see no way to characterize the "disgorgement" remedy in the present case as anything other than a penalty. Refunding to FGT all of the revenues from Coastal's intrastate sales exceeds both the injury to FGT's interstate

customers and the unjust enrichment of Coastal. Coastal not only forfeits all of its profits, but it is also denied any payment whatsoever for the gas, including the recoupment of costs.

So long as the Commission heeds our decision that a penalty, as such, is neither appropriate nor permissible and any consideration on remand bears this carefully in mind, we think that either of the two alternatives considered by the Commission would constitute a starting point in fashioning an appropriate remedy.[6] A remedy requiring a refund to FGT in the amount that FGT had to pay for replacement of the illegally diverted gas (approximately $900,-000 including interest) is authorized by our decision in *Mesa Petroleum Co. v. Federal Power Commission,* 441 F.2d 182 (5th Cir. 1971). Moreover, in *Cox v. FERC,* 581 F.2d 449 (5th Cir.1978), we ruled that it is proper for the Commission, in fashioning a remedy for unauthorized abandonment of interstate service, to restore the status quo ante and prevent unjust enrichment of the wrongdoer. Thus, the remedy stripping Coastal of its profits in excess of what it would have made under the contract with FGT is also an appropriate remedy.

The remedy ultimately imposes by the Commission—stripping Coastal of *all* the revenues generated by its intrastate sales, including the unrecovered cost of the gas so delivered—exceeds the remedies authorized by either *Mesa Petroleum* or *Cox.* Disgorgement of all revenues neither addresses FGT's injury nor restores the status quo ante of either party. Therefore, we find that the remedy imposed by FERC constitutes a penalty not authorized by law and, consequently, an abuse of the agency's discretion. We thus remand to the Commission and direct it to fashion a remedy not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART.

---

6. We do not, however, purport to limit the Commission to these two alternatives.