# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 8, 2017

Lyle W. Cayce
Clerk

No. 16-20642

—————

TOTAL GAS & POWER NORTH AMERICA, INCORPORATED; AARON
TRENT HALL; THERESE NGUYEN TRAN,

      Plaintiffs - Appellants

v.

FEDERAL ENERGY REGULATORY COMMISSION; ACTING CHAIRMAN
CHERYL A. LAFLEUR, In her official capacity; COMMISSIONER
COLETTE D. HONORABLE, In her official capacity; CHIEF ALJ CARMEN
A. CINTRON, In her official capacity,

      Defendants - Appellees

—————————————

Appeal from the United States District Court
for the Southern District of Texas

—————————————

Before KING, JOLLY, and PRADO, Circuit Judges.

KING, Circuit Judge:

We are presented with a challenge to the authority of the Federal Energy
Regulatory Commission to adjudicate violations of the Natural Gas Act and to
impose civil penalties on violators.  TOTAL Gas & Power North America, Inc.,
a company that trades in North American natural gas markets, and two of its
trading managers brought this declaratory judgment action against the
Commission arguing that the Commission was precluded from adjudicating
violations or imposing civil penalties because the Natural Gas Act vests

No. 16-20642

authority for those activities exclusively in federal district courts.  The district court granted the Commission's motion to dismiss.  Because we conclude that the claims are not ripe, we AFFIRM.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case involves the process that Defendant–Appellee the Federal Energy Regulatory Commission (FERC) uses for adjudicating violations of the Natural Gas Act (NGA), 15 U.S.C. § 717 *et seq.*, and imposing civil penalties on the violators.  For context, we first review the statutory and regulatory scheme that guides FERC's process for adjudicating NGA violations and imposing penalties, and then we discuss the facts of this case.

### A.  Statutory Backdrop

FERC is an independent regulatory commission comprised of five commissioners, each appointed by the President, who serve five-year terms.  42 U.S.C. § 7171(b)(1).  FERC primarily administers three statutes: the Federal Power Act (FPA), 16 U.S.C. § 791a *et seq.*; the Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C. § 3301 *et seq.*; and the NGA.  The NGA, the statute at issue in this appeal, was enacted in 1938.  Natural Gas Act of 1938, Pub. L. No. 75-688, 52 Stat. 821.  It grants FERC the authority to regulate the interstate transport and sale of natural gas by, for example, setting pipeline rates and establishing the conditions for transportation facilities.  15 U.S.C. §§ 717, 717c, 717f.  In the Energy Policy Act of 2005 (EPACT 2005), Congress amended the NGA to prohibit manipulation in natural gas markets by market participants.  Pub. L. No. 109-58, 119 Stat. 594, 691 (codified at 15 U.S.C. § 717c-1).

EPACT 2005 also made changes to how the NGA was enforced.  Prior to 2005, the NGA provided FERC with limited enforcement powers.  *See* JAMES H. MCGREW, AM. BAR ASS'N, BASIC PRACTICE SERIES, FERC: FEDERAL ENERGY REGULATORY COMMISSION 239–41 (2d ed. 2009).  The pre-2005 NGA (like the current NGA) permitted FERC to "investigate any facts, conditions, practices,

2

or matters which it may find necessary or proper in order to determine whether any person has violated [the NGA]." 15 U.S.C. § 717m. In addition, it authorized FERC to conduct hearings and to establish the procedural rules governing those hearings. *Id.* § 717n. However, if the investigation yielded a finding of a violation, FERC had limited options available to punish violators. Under the pre-2005 NGA, FERC was limited to seeking injunctive relief and criminal penalties against violators in federal district court.[1] *Id.* §§ 717s, 717t.

Congress significantly enhanced FERC's enforcement powers under the NGA in EPACT 2005. MCGREW, *supra*, at 239–45. Section 22 added, for the first time, civil monetary penalties (capped at $1 million per day per violation) to those remedies available against NGA violators.[2] Pub. L. No. 109-58, 119 Stat. 594, 691 (codified at 15 U.S.C. § 717t-1). Section 22 provides:

> **(a) In general**
>
> Any person that violates this chapter, or any rule, regulation, restriction, condition, or order made or imposed by the Commission under authority of this chapter, shall be subject to a civil penalty

---

[1] As an historical matter, FERC often imposed a variety of other penalties against NGA violators, such as disgorgement of profits, imposition of compliance plans, and suspension or revocation of operating certificate or market-based rate authority, *see Revised Policy Statement on Enforcement* ¶ 6, 123 FERC 61,156, 62,008 (2008) [hereinafter *2008 Revised Policy*], but these remedies sometimes encountered legal difficulties because they are not expressly provided for in the NGA, *see Laclede Gas Co. v. FERC*, 997 F.2d 936, 945–48 (D.C. Cir. 1993); *Coastal Oil & Gas Corp. v. FERC*, 782 F.2d 1249, 1253 (5th Cir. 1986).

[2] In addition to adding civil penalty authority under the NGA, EPACT 2005 also enhanced FERC's preexisting civil penalty authority under the FPA and the NGPA. 119 Stat. 691, 980 (codified at 15 U.S.C. § 3414(b)(6)(A); 16 U.S.C. § 825o-1(b)). But the procedures for imposing civil penalties under these statutes differ from those under the NGA. Under the FPA, the alleged violator may opt to participate in a hearing regarding the proposed civil penalty on the record before an administrative law judge (ALJ), with any resulting penalty being subject to review in a federal court of appeals for substantial evidence. 16 U.S.C. § 823b(d)(2). Alternatively, the alleged violator may choose to forego a hearing and for FERC to immediately assess the proposed penalty and then seek de novo review in federal district court. *Id.* § 823b(d)(3). Similarly, the NGPA explicitly grants a federal district court authority to review de novo any civil penalty assessed by FERC under the NGPA if the violator does not pay the penalty within 60 days. 15 U.S.C. § 3414(b)(6)(F).

No. 16-20642

of not more than $ 1,000,000 per day per violation for as long as the violation continues.

**(b) Notice**

The penalty shall be assessed by the Commission after notice and opportunity for public hearing.

**(c) Amount**

In determining the amount of a proposed penalty, the Commission shall take into consideration the nature and seriousness of the violation and the efforts to remedy the violation.

15 U.S.C. § 717t-1.

## B.  Regulatory Backdrop

Following the passage of EPACT 2005, FERC issued a 2006 policy statement interpreting its new civil penalty authority.  *Statement of Administrative Policy Regarding the Process for Assessing Civil Penalties*, 117 FERC 61,317 (2006) [hereinafter *2006 Policy*].  Crucially, FERC explained that, for civil penalties assessed under the NGA, "unlike the FPA and NGPA, Congress did not establish a *de novo* court review."  *Id.* ¶ 8, 117 FERC at 62,533.  Accordingly, FERC interpreted the NGA to permit FERC itself to assess penalties under the NGA through either "a paper hearing or a hearing before an ALJ."  *Id.* ¶ 2, 117 FERC at 62,533.  FERC has established a comprehensive procedure for assessing civil penalties under the NGA.  We provide an overview in order to situate the facts of this case within that procedure.

(1)  FERC's Office of Enforcement, the FERC division in charge of investigating alleged violations, reviews referrals and tips of potential NGA violations by natural gas companies and market participants to determine whether there is a substantial basis for opening an investigation.  *2008 Revised Policy* ¶¶ 23–26, 123 FERC at 62,012; *see* 18 C.F.R. § 1b.3.

No. 16-20642

(2) After opening an investigation, Enforcement employs conventional discovery methods such as reviewing documents, conducting interviews and depositions, and communicating with the subject of the investigation. *2008 Revised Policy* ¶ 28, 123 FERC at 62,013; *see* 18 C.F.R. § 1b.3. Enforcement can terminate an investigation at any point during this process. *2008 Revised Policy* ¶ 31, 123 FERC at 62,013

(3) If Enforcement concludes that a violation has occurred, it sends the alleged violator the factual and legal conclusions of its investigation and its proposed penalty, to which the alleged violator may confidentially respond. *Id.* ¶ 32; *see* 18 C.F.R. § 1b.19. In some cases, this response has prompted Enforcement to terminate the investigation. *2008 Revised Policy* ¶ 32, 123 FERC at 62,013.

(4) If Enforcement continues to believe that a violation has occurred, it attempts to engage in settlement discussions with the alleged violator. *Id.* ¶ 33–34, 123 FERC at 62,013–14. This step concludes the investigation stage of the process and commences the enforcement stage.

(5) If these settlement discussions are unavailing, Enforcement submits to the commissioners of FERC its recommendation to initiate an enforcement proceeding and impose a civil penalty against the alleged violator, together with any response from the alleged violator. *Id.* ¶ 35, 123 FERC at 62,014. The alleged violator is usually notified of this recommendation in advance. *Id.*

(6) If FERC deems it appropriate, it issues an order to show cause to the alleged violator, which includes the amount of Enforcement's proposed penalty and a statement of the material facts constituting the violation. *Id.* ¶ 36, 123 FERC at 62,014; *2006 Policy* ¶ 7, 117 FERC at 62,533. In issuing this order, FERC does *not* make a finding that there has been a NGA violation. *2008 Revised Policy* ¶ 37, 123 FERC at 62,014. Rather, issuing an order to show cause merely triggers the procedural rules that FERC has promulgated to

5

govern its hearings. *Id.*; *see* 18 C.F.R. §§ 385.101–2202. One such rule dictates that when an order to show cause is issued, the Enforcement staff who were involved in the investigation are designated as "non-decisional" and are not permitted to further advise FERC commissioners on the matter. *2008 Revised Policy* ¶ 37, 123 FERC at 62,014; *see* 18 C.F.R. §§ 385.2201, 385.2202.

(7) The alleged violator may file an answer to the order to show cause, which may include arguments on why it did not violate the NGA and why the proposed penalty should not be assessed or should be reduced. *2006 Policy* ¶ 7, 117 FERC at 62,533.

(8) FERC reviews the alleged violator's answer, together with Enforcement's recommendation. *Id.*

(9) If FERC is unpersuaded by the alleged violator's answer, it determines what type of procedure is necessary to adjudicate the violation and assess the penalty. *Id.* It may choose to assess a penalty based on the record before it, conduct a "paper hearing" based on the parties' written submissions, or schedule a hearing before an ALJ. *Id.*

(10) If it proceeds to a paper hearing, FERC reviews solely the paper record. *Id.* If the matter is heard before an ALJ, the ALJ issues an initial decision in which it determines whether a NGA violation occurred and recommends a penalty amount. *Id.*; 18 C.F.R. § 385.708(b)(1). After the ALJ issues its initial decision, either party may file with FERC exceptions to the decision, which identify alleged factual or legal errors made by the ALJ. 18 C.F.R. § 385.711. The other party may then file an opposition to these exceptions. *Id.* Either party may also request oral argument on the matter before FERC. *Id.* FERC may also require briefs and oral argument before issuing its final order. *Id.* § 385.712. FERC then considers the ALJ's decision, together with any filings or oral arguments by the parties. *2006 Policy* ¶ 7, 117 FERC at 62,533. In a 2008 policy statement, FERC outlined the five broad

factors it considers in setting the amount of a penalty. *2008 Revised Policy* ¶¶ 54–71, 123 FERC at 62,017–21. These factors are (a) seriousness of the offense, (b) the violator's commitment to compliance, (c) whether the company self-reported the violation, (d) the extent of the violator's cooperation in the investigation, and (e) the extent to which the violator relied on guidance from FERC staff in committing the violation. *Id.*

(11) FERC issues a final order in which it may adjudicate a NGA violation and assess a civil penalty. *2006 Policy* ¶ 7, 117 FERC at 62,533.

(12) If the alleged violator does not prevail, it may request a rehearing before FERC within 30 days. *Id.*; *see* 15 U.S.C. § 717r.

(13) If rehearing is unavailing, the alleged violator may then appeal to a federal court of appeals, which then reviews FERC's factual findings for substantial evidence. *2006 Policy* ¶ 7, 117 FERC at 62,533; *see* 15 U.S.C. § 717r.

(14) If the penalty is not paid, FERC may institute an enforcement action in a federal district court. *2006 Policy* ¶ 7, 117 FERC at 62,533.

## C. Facts and Proceedings

Plaintiff–Appellant TOTAL Gas & Power North America, Inc. (TGPNA) is the North American subsidiary of the France-based TOTAL S.A., one of the world's largest oil and gas companies. TGPNA trades in the North American natural gas markets. In July 2012, FERC initiated a formal investigation into TGPNA and two of its trading managers, Aaron Hall and Therese Tran (TGPNA together with its trading managers, Total) based on a tip it received from a former TGPNA employee alleging that the company had been manipulating prices in the natural gas markets.[3] *Order to Show Cause and*

---

[3] The details of Total's alleged NGA violations are largely irrelevant to this appeal. The crux of the investigation centered on allegations that TGPNA traders in the southwestern United States accumulated a large quantity of physical and financial natural

*Notice of Proposed Penalty*, 155 FERC 61,105, app. A, 2016 WL 1723518, at *14 (2016). In November 2015, after more than three years of investigation, Enforcement notified Total of its intention to recommend that FERC initiate enforcement proceedings against it for violations of the NGA and assess corresponding civil penalties.

After receiving the notice, Total filed this declaratory judgment action in federal district court on January 27, 2016. Total sought a declaration that FERC lacked the authority to adjudicate violations of the NGA and assess corresponding civil penalties through in-house administrative proceedings because the NGA vested such authority exclusively in federal district courts. Total based this argument on Section 24 of the NGA, which provides: "The District Courts of the United States . . . shall have exclusive jurisdiction of violations of [the NGA] . . . , and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, [the NGA] . . . ." 15 U.S.C. § 717u. In addition, Total sought a declaration that adjudication of a NGA violation and imposition of a civil penalty through an in-house FERC administrative proceeding would violate, in relevant part, the Appointments Clause, the Fifth Amendment's Due Process Clause, and the Seventh Amendment's guarantee of a jury trial. Total conceded that it did not "seek to stop FERC from conducting an investigation or otherwise exercising its lawful authority" under the NGA, but rather simply sought to preserve

---

gas products and then traded monthly physical fixed price natural gas in high volumes during the strategic "bidweek" period in order to drive up index prices in a way that would benefit its own natural gas holdings. *See Order to Show Cause and Notice of Proposed Penalty*, 2016 WL 1723518, at *4–6. This conduct was alleged to violate the NGA's prohibition on manipulation in the natural gas markets. *See* 15 U.S.C. § 717c-1.

No. 16-20642

Total's right to have any violation "adjudicated in the first instance by a federal district court."

The proceedings before FERC and the district court proceeded on parallel, independent tracks.  In the FERC proceeding, FERC issued an order to show cause on April 28, directing Total to respond and explain why it should not be found to have violated the NGA by manipulating prices and why it should not have to disgorge $9 million in alleged unjust profits and be assessed over $216 million in civil penalties.  *Order to Show Cause and Notice of Proposed Penalty*, 155 FERC 61,105, 2016 WL 1723518, at *1–2.  The order to show cause also included an overview of the rest of the process for adjudicating a violation and imposing a penalty, which mirrors Steps 8–14 above.  *Id.*  On July 12, Total filed a 201-page answer raising numerous factual and legal arguments, including the same jurisdictional challenge to FERC's authority that Total had raised in its declaratory action.  *Answer in Opposition to Order to Show Cause and Notice of Proposed Penalty*, *Total Gas & Power N. Am., Inc.*, No. IN12-17-000 (July 12, 2016).  Total's answer opposed the imposition of any penalty and urged that FERC summarily dismiss the claims without a hearing. *Id.*

Back in district court, while the administrative proceeding was still pending, FERC moved to dismiss Total's claims under Federal Rule of Civil Procedure 12(b)(1) for, in relevant part, lack of subject matter jurisdiction due to lack of ripeness.  Days later, Total moved for summary judgment.  On July 15, before any further progress in the FERC proceeding, the district court ruled on these dueling motions simultaneously, granting FERC's motion to dismiss and denying Total's motion for summary judgment as moot.  The district court provided three alternative grounds for dismissing Total's declaratory action.  First, the district court concluded that the case was not justiciable because (a) the relief requested would not completely resolve the dispute, since the merits

of the market manipulation allegations against Total would remain unresolved even if the district court ruled in Total's favor, and (b) the case was not yet ripe because FERC had not issued a final order.  Second, on the merits, the district court disagreed with Total's interpretation of the NGA's jurisdictional dictates, instead concluding that the NGA permitted FERC to adjudicate NGA violations and assess civil penalties through an in-house administrative proceeding; therefore, no action by the district court to interfere with the FERC proceedings was warranted.  Finally, the district court stated that, even if Total was right on the merits and the action was justiciable, the district court nevertheless declined to exercise its discretion to entertain the declaratory action.

Total moved for reconsideration of the district court's judgment, offering responses to several points in the court's order that were raised by the district court *sua sponte* (because subject matter jurisdiction was at issue).  Total also sought leave to amend its complaint to add a request for a declaration that it did not violate the NGA in order to alleviate the district court's concern that its requested relief would not fully resolve the dispute.  The district court denied Total's motion for reconsideration and also denied it leave to amend the complaint, finding that amendment would be futile in the light of the district court's two alternative bases for dismissal.  Total timely appeals all the district court's orders.

While this appeal was pending, the FERC proceeding has continued apace.  Most recently, on September 23, 2016, Enforcement filed a reply to Total's answer to the order to show cause.  *Enforcement Staff's Reply to Respondents' Answer to Order to Show Cause and Notice of Proposed Penalties and Opposition to Respondents' Motion for Summary Disposition, Total Gas & Power N. Am., Inc.*, No. IN12-17-000 (Sept. 23, 2016).  Enforcement's reply opposed Total's request for summary disposition of the matter and requested

No. 16-20642

three rulings.  First, it requested that FERC set the matter for a hearing before an ALJ to resolve certain disputes of material fact.  *Id.* at 4.  Second, it requested that FERC decide certain undisputed facts without a hearing.  *Id.* Third, it urged FERC to reject Total's legal and jurisdictional challenges to the proceeding in their entirety.  *Id.*  To date, however, FERC has not ordered the matter to be heard before an ALJ nor has it taken any other action on these pending motions.[4]  *See* FERC Docket No. IN12-17-000.  The proceeding is thus stalled at Step 8 of the process we outlined above.

## II.    STANDARDS OF REVIEW

We review de novo a district court's rulings on a motion to dismiss and a motion for summary judgment, applying the same standard as the district court.  *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 513 (5th Cir. 2017); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).  We may affirm the district court's rulings any basis supported by the record.  *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015); *Simbaki, Ltd.*, 767 F.3d at 481.  We also review ripeness issues de novo and the plaintiff bears the burden of proof.  *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir 2012).

## III.    RIPENESS

Total brings its claims in the form of a declaratory judgment action. Under the Declaratory Judgment Act, any federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  When considering a declaratory judgment action, a district court

---

[4] The most recent filings reflected on the docket are Total's motion for leave to respond to Enforcement's reply (January 17), Enforcement's answer to this motion (January 27), and Enforcement's motion to supplement its reply (February 23).  To date, no orders have been issued on these pending motions.

must first determine whether the action is justiciable, which frequently boils down to a question of ripeness. *See Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). "[A] declaratory judgment action, like any other action, must be ripe in order to be justiciable." *Id.* at 896. If the action is not ripe, the court must dismiss it. *Id.* at 895. Accordingly, we first consider whether this declaratory judgment action is ripe. Because we conclude it is not, we end our analysis and do not reach the merits of Total's claims.[5]

## A.  Ripeness and Declaratory Judgment Actions

The ripeness requirement originates from Article III of the United States Constitution, which provides that federal courts have jurisdiction over "cases" or "controversies." U.S. Const. art. III, § 2; *see Choice Inc.*, 691 F.3d at 714–15. "[R]ipeness . . . determine[s] *when* . . . litigation may occur. Specifically, the ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 n.12 (5th Cir. 2008) (second alteration and first omission in original) (quoting ERWIN CHEMERINSKEY, FEDERAL JURISDICTION § 2.4.1. (5th ed. 2007) (emphasis added)). "The ripeness doctrine's 'basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Choice Inc.*, 691 F.3d at 715 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). In determining whether a case is ripe,

---

[5] Because we affirm the district court's dismissal on this basis, we do not resolve Total's argument regarding the district court's alternative bases for denial: its interpretation of NGA Section 24 and its exercise of discretion to decline to hear the declaratory judgment action. Nor do we resolve Total's challenge to the district court's denial of leave to amend the complaint because the basis on which Total sought to amend related to one of the district court's alternative bases for dismissal—that the requested relief would not completely resolve the parties' dispute.

we rely on two "key considerations": "the fitness of the issues for judicial resolution and the hardship to the parties of withholding court consideration." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Labs.*, 387 U.S. at 149).

Although a declaratory judgment action is often brought before injury has occurred, it is nevertheless subject to the ripeness requirement. *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). "A declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists." *Orix Credit All.*, 212 F.3d at 896 (quoting 28 U.S.C. § 2201(a)). Whether an actual controversy exists must be determined on a case-by-case basis, but, "[a]s a general rule, [one] exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.'" *Id.* (third alteration in original) (quoting *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)).

To determine whether Total's claims are ripe, it is necessary to outline its arguments. First, Total contends that, although FERC is statutorily authorized to conduct the 14-step procedure we set out above, it may not issue a final order adjudicating a NGA violation or imposing a civil monetary policy. Rather, Total urges, FERC is permitted through these procedures only to *recommend* a finding of a NGA violation and *propose* a penalty; only a federal district court has the power to adjudicate a violation and impose a penalty. Total thus objects not to the FERC's process but to the potential *outcome* of this process. For this argument, Total relies on Section 24 of the NGA, entitled "Jurisdiction of offenses; enforcement of liabilities and duties." 15 U.S.C. § 717u. Section 24, which was included in the original NGA enacted in 1938, provides:

> The District Courts of the United States . . . shall have exclusive jurisdiction of violations of [the NGA] or the rules, regulations, and

orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, [the NGA] or any rule, regulation, or order thereunder. . . . Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, [the NGA] or any rule, regulation, or order thereunder may be brought in any such district or in the district wherein the defendant is an inhabitant . . . .

*Id.* According to Total, Section 24's grant of "exclusive jurisdiction of [NGA] violations" to federal district courts precludes FERC from conclusively adjudicating such violations, along with the corresponding civil penalties, through in-house administrative proceedings. If it wishes to impose civil penalties under the NGA, Total asserts, FERC must instead bring an action in federal district court.

In addition to this jurisdictional claim, Total asks for a declaration that FERC's proceedings violate various constitutional rights. First, Total claims that allowing an ALJ to preside over a hearing that resulted in a "binding" order would violate the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, because the manner in which FERC appoints ALJs does not comport with the Appointment Clause's requirements for the appointment of "inferior officers." Second, Total argues that such a proceeding would deprive it of its Seventh Amendment right to a jury trial in an Article III tribunal. U.S. Const. amend. VII. Third, Total alleges that such a proceeding would also violate the Fifth Amendment's Due Process Clause's guarantee of an impartial tribunal because Enforcement staff who assisted in the investigatory stage are permitted to advise the ALJ and FERC commissioner during the enforcement stage.

## B. Our Decision in *Energy Transfer Partners, L.P. v. FERC*

We have recognized that "applying the ripeness doctrine in the declaratory judgment context presents a unique challenge." *Orix Credit All.,* 212 F.3d at 896. Fortunately, here, we do not write on a blank slate. In *Energy*

*Transfer Partners, L.P. v. FERC*, we addressed the issue of ripeness in the context of a party raising an identical argument to the primary one that Total raises here: Section 24 of the NGA grants district courts exclusive jurisdiction over adjudication of NGA violations and imposition of civil penalties, precluding any such adjudication by FERC. 567 F.3d 134, 138–39 (5th Cir. 2009). In that case, similar to here, FERC issued to Energy Transfer Partners, L.P. (ETP) an order to show cause that raised allegations of market manipulation in violation of the NGA and proposed a civil penalty of $82 million. *Id.* at 136. ETP filed an answer asserting that it had not violated the NGA and requesting summary disposition of the matter, again, just as Total did here. *Id.* at 137. However, the FERC case against ETP progressed beyond Total's case. After reviewing ETP's answer, FERC denied ETP's request for summary disposition and instead issued an order scheduling the matter for a hearing before an ALJ to resolve genuine issues of material fact—a step that FERC has not taken in this case. *Id.* ETP requested a rehearing on this order and a stay in the meantime, which FERC denied. *Id.* ETP then filed a petition for review of the order denying rehearing—along with the order to show cause—in this court. *Id.*

On appeal, just as Total argues now, ETP argued that Section 24 of the NGA vested exclusive jurisdiction in a federal district court to determine de novo if ETP had violated the NGA and impose civil penalties for violations, thereby prohibiting FERC from doing so through a proceeding before an ALJ. *Id.* at 138–39. But ETP conceded that FERC was permitted to make some sort of initial recommendation on a proposed civil penalty prior to district court proceedings. *Id.* at 138. At the time we considered ETP's petition, just as now, the matter had not yet been heard by an ALJ nor had FERC issued a final order. *Id.* at 141.

No. 16-20642

We concluded in *Energy Transfer Partners* that ETP's petition for review was not ripe and accordingly dismissed it. *Id.* at 141–44, 146. We acknowledged that the NGA "is far from clear" on the question whether FERC could assess a civil penalty through a hearing before an ALJ rather than a proceeding in district court. *Id.* at 146. However, we declined to decide this question because its resolution must await "when and if [FERC] determines that the NGA has been violated and assesses a penalty." *Id.* Because FERC had made no such determination—rather, it had merely scheduled the allegations against ETP for a hearing before an ALJ—the proper construction of the NGA's requirements for civil penalty assessment was not ripe for resolution. *Id.*

## C. Ripeness of Total's claims

Our decision in *Energy Transfer Partners* controls our resolution of Total's appeal and dictates that we dismiss it for lack of ripeness. Our ripeness analysis in this case fits squarely under our ripeness analysis in *Energy Transfer Partners*. Total makes an identical argument to that made by ETP— only with the addition of related constitutional arguments that are similarly predicated on uncertain future events—and the underlying FERC proceeding against Total has made even *less* progress than that against ETP had made at the time of our decision in that case. Accordingly, as in *Energy Transfer Partners*, we must decline to address the merits of Total's arguments regarding the NGA. If and when FERC conclusively determines that Total has violated the NGA and imposes civil penalties against it, Total can raise all the arguments it now raises to challenge FERC's jurisdiction, but with the benefit of an actual, concrete controversy for this court to review rather than mere speculations about future hypothetical events.

To begin with, Total's argument relating to the district court's jurisdiction under Section 24 of the NGA is identical to that raised by ETP. We

first emphasize that Total, similar to ETP, does not object to any of the actions that FERC has already taken in this matter. To the contrary, Total explicitly concedes that FERC has the authority to conduct a proceeding regarding the alleged violation and to propose a penalty *prior* to any action being brought in the district court. Indeed, in its brief on appeal, Total concedes that "[t]he NGA does not bar FERC from first holding an abbreviated in-house 'public hearing' . . . *before* proceeding to district court . . . ." (Emphasis added.) Instead, just as ETP, Total objects only to future actions that FERC *may* take, namely, conclusively adjudicating NGA violations and imposing civil penalties against Total.

We emphasize that FERC taking these future actions is only a possibility. As in *Energy Transfer Partners*, FERC has not made any conclusive determination that Total violated the NGA, nor has it assessed a civil penalty against Total. Indeed, the FERC proceedings in this case fall short of even those in *Energy Transfer Partners* because, to date, FERC has not scheduled the matter for a hearing. Rather, FERC has simply initiated enforcement proceedings against Total by issuing an order to show cause, to which Total has responded with a 201-page answer raising a plethora of factual and legal challenges to the allegations in the order to show cause. In other words, this matter is currently stalled at Step 8 in the civil penalty assessment process outlined above. And by issuing an order to show cause, FERC does *not* make a finding that there has been a NGA violation. *See Energy Transfer Partners*, 567 F.3d at 141; *2008 Revised Policy* ¶ 37, 123 FERC at 62,014. Rather, in order to adjudicate a NGA violation and assess a corresponding civil penalty, FERC must complete steps 8 through 11 above: First, it must consider Total's answer. Second, if it is unpersuaded by the arguments in Total's answer, it must determine what type of proceeding is necessary to adjudicate the matter. Third, if it sets the matter for a hearing before the ALJ, FERC

must review the ALJ's initial decision, together with any exceptions (and answers to exceptions) filed by the parties. It may also request additional briefing or oral argument. If (in FERC's judgment) only a paper hearing is required, FERC reviews the record. Fourth, FERC issues a final order regarding the violation and the penalty, taking into account the five factors outlined above. Only upon completion of this final step does FERC conclusively adjudicate a violation and impose a penalty.

Moreover, FERC can terminate a proceeding at any point during these steps without a finding of a violation. Indeed, as the *Energy Transfer Partners* court noted, other alleged violations against ETP had been heard by an ALJ and dismissed by the ALJ prior to our decision in that case. It is possible that something in Total's 201-page answer will compel FERC to drop the enforcement action. If not, it is also possible that the ALJ rules in Total's favor or, if not, that FERC rejects the ALJ's initial order. We discuss these hypotheticals not to express judgment on the merits of the allegations against Total but rather to underscore the point that, just as in *Energy Transfer Partners*, Total's arguments are limited to future actions that FERC *may* take, not actions that FERC has already taken or those that it definitely *will* take in the future. And if these various decisions are all resolved against Total and FERC issues a final order finding a NGA violation and assessing a civil penalty, Total is free to bring an action for a declaration of FERC's jurisdiction at that time.

Our holding in *Energy Transfer Partners* also proves fatal to Total's claims regarding constitutional violations. In addition to its jurisdictional argument, Total requests a declaration that FERC's administrative process for adjudicating NGA violations and assessing civil penalties violates the Appointments Clause, the Fifth Amendment's Due Process Clause, and the Seventh Amendment's guarantee of a jury trial. The Appointments Clause

argument relates to the manner in which FERC appoints its ALJs, and the Fifth and Seventh Amendments arguments relate to certain procedures that FERC has established for conducting hearings.  But each of these arguments is predicated on the assumption that FERC will ultimately schedule a hearing before an ALJ and issue a final order assessing civil penalties against Total. Total does not contend that any of the actions that FERC has already taken violate these constitutional rights; it does not, for instance, claim that FERC's proceedings to date have deprived it of due process.  Rather, Total claims that actions FERC could potentially take in the future may violate these rights.  As we just discussed, whether FERC ultimately takes actions that Total claims would violate its constitutional rights rests on a series of contingencies and is not a certainty.  Again, Total is free to bring these claims if and when FERC issues a final adverse order.

Total's arguments to the contrary are unavailing.  First, Total attempts to distinguish *Energy Transfer Partners* based on the nature of the action. Total brings this challenge as a declaratory judgment action, purporting to rely on the district court's "exclusive" jurisdiction over NGA violations under Section 24 of the NGA.  In contrast, *Energy Transfer Partners* was brought as a petition for review under Section 19(b) of the NGA, which affords appellate review to any party "aggrieved" by a FERC "order."  15 U.S.C. § 717r(b); *see Energy Transfer Partners*, 567 F.3d at 137, 139.  According to Total, this distinction renders *Energy Transfer Partners* wholly inapplicable because, unlike a Section 19(b) petition for review, a declaratory action need not await a final agency action in order to be ripe.  We disagree.  It is true that, unlike in *Energy Transfer Partners*, Total is not seeking review of a FERC action under Section 19(b) but rather is seeking a declaration of its right to have the action heard in federal district court.  Whether a petition for review under Section 19(b) is ripe requires consideration of whether the party has been sufficiently

"aggrieved" by FERC's action.[6]  *Energy Transfer Partners*, 567 F.3d at 139; *see* 15 U.S.C. § 717r(b) (affording appellate review only to parties "aggrieved by an order issued by [FERC]").  This ripeness analysis is not identical to the analysis for declaratory judgment actions that we outlined above, which requires consideration of whether an actual controversy with sufficient immediacy and reality exists.  *Compare Energy Transfer Partners*, 567 F.3d at 139–40 (outlining ripeness analysis for Section 19(b) petitions), *with Orix Credit All.*, 212 F.3d at 896 (outlining ripeness analysis for declaratory actions).

Yet this difference does not avoid the crux of *Energy Transfer Partners*' holding: A challenge to FERC's authority to impose civil penalties under the NGA is not ripe until "when and if [FERC] determines that the NGA has been violated and assesses a penalty."  *Energy Transfer Partners*, 567 F.3d at 146. We do not discern, and Total does not offer, any principled way to limit *Energy Transfer Partners*' reasoning to petitions for review under Section 19(b).  To the contrary, the language of *Energy Transfer Partners* extends to any such challenge, regardless of the form in which it is brought.  And, as discussed above, it is undisputed that FERC has not determined whether Total violated the NGA, nor has it imposed a penalty.  Thus, under the holding of *Energy Transfer Partners*, Total's request for a declaratory judgment is not ripe.

---

[6] We have "distilled four factors" to consider in analyzing whether a FERC order is ripe for review under Section 19(b):

> (1) whether the issues the issues presented are purely legal; (2) whether the challenged [FERC] action constitutes "final agency action," within the meaning of Section 10 of the Administrative Procedure Act; (3) whether the challenged [FERC] action has or will have a direct and immediate impact upon the petitioners; and (4) whether resolution of the issues will foster, rather than impede, effective enforcement and administration by [FERC].

*Energy Transfer Partners, L.P.*, 567 F.3d at 139–40 (quoting *Pennzoil Co. v. FERC*, 645 F.2d 360, 398 (5th Cir. 1981)).

No. 16-20642

Total counters that if it is forced to await final FERC resolution to bring its claims, it will suffer significant harm in the meantime.  Total asserts that it is already being injured by the FERC proceedings and this "tangible harm" renders the dispute ripe.  According to Total, it is "incurr[ing] significant expense defending against" the order to show cause.  In support of this argument, Total cites caselaw for the proposition that "[t]he concrete costs of an additional proceeding is a cognizable Article III injury," (quoting *Sea–Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 648 (D.C. Cir. 1998)), and "the 'hardship' of being forced to defend in an 'ultra vires proceeding' is a present injury ripe for adjudication," (quoting *Stolt–Nielsen SA v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 n.2 (2010)).  Total urges that it requires relief *now*, as opposed to in the future, to "spare [it] the additional unnecessary expense [it] will continue to suffer" as a result of FERC's ongoing enforcement action.

This argument is refuted by one simple fact: Total, as discussed above, concedes that FERC is authorized to conduct a proceeding regarding the alleged violation and penalty *prior* to any action being brought in the district court.  This means that it is undisputed that, under either party's interpretation of the NGA, Total would have to undergo a proceeding conducted by FERC *prior* to any district court proceeding.  Therefore, Total is not being forced to undergo an "additional" proceeding nor is it being subjected to an "ultra vires" proceeding.  Even under Total's proposed interpretation of the NGA, Total would be forced to undergo some burden and expense in FERC proceedings prior to any proceedings in district court.

Total nevertheless argues that if the FERC proceeding involves the possibility of a future definitive finding of a NGA violation and imposition of a penalty, as FERC argues it does, Total will be forced to expend "substantial *incremental* burden and expense" to defend itself, compared to a proceeding that can result only in a FERC order that recommends finding a violation and

21

proposes a penalty. Total also posits that, if the FERC proceedings could not result in a binding outcome, the proceedings would be "abbreviated," thereby further reducing Total's expense. According to Total, this incremental burden and expense renders its claims ripe.

We reject this argument. Total offers only speculation to the effect that, if its interpretation of the statute prevailed, FERC would significantly "abbreviate[]" the proceedings.[7] To the contrary, the NGA affords FERC wide latitude to dictate the terms of the civil penalty process, requiring only that it involve "notice and opportunity for public hearing." 15 U.S.C. § 717t-1(b). And, although it may be true that Total will put more effort into defending itself in the FERC proceeding if a possible outcome is a definitive finding of liability and binding imposition of a penalty (in comparison to simply a recommendation), we rejected this same argument for ripeness made in *Energy Transfer Partners*. ETP contended that the litigation expenses of participating in the FERC proceedings weighed in favor of finding ripeness. *Energy Transfer Partners, L.P.*, 567 F.3d at 141–42. In rejecting this argument, we explained that, according to the Supreme Court, "the expense and annoyance of litigation," though "substantial[,] . . . is part of the social burden of living under government," and thus cannot constitute sufficient hardship for ripeness. *Id.* Similarly here, the fact that Total may incur some expense in participating in proceedings before FERC—even if it is more than it would be if those

---

[7] The likelihood of "abbreviated" proceedings in this matter is further reduced by the fact that Total filed a 201-page answer to the order to show cause, raising a plethora of legal and factual challenges to the allegations of NGA violations, which FERC must now consider and resolve. *Answer in Opposition to Order to Show Cause and Notice of Proposed Penalty*, *Total Gas & Power N. Am., Inc.*, No. IN12-17-000 (July 12, 2016).

proceedings were reviewed de novo—does not render its declaratory action ripe.[8]

In sum, Total does not object to any actions FERC has already taken. Rather, Total seeks to preemptively challenge a FERC order that may never be issued. All of Total's arguments are predicated on future events and are brought before FERC has even scheduled the matter for a hearing—let alone issued an order finding a NGA violation and imposing a civil penalty. Yet in *Energy Transfer Partners*, we held that any challenge to FERC's authority to adjudicate NGA violations and impose a civil penalty must await a final determination of a violation and imposition of a penalty by FERC. *Id.* at 146. Total's suit is thus not ripe and the district court did not err in dismissing it on justiciability grounds.

## IV. CONCLUSION

Because all of Total's claims are unripe, the district court's order dismissing them is AFFIRMED.

---

[8] We additionally note that Total's own argument undercuts its assertion regarding the expense and burden of FERC proceedings. In another section of its brief, Total complains that FERC's proceeding will not afford it enough process. It claims that FERC interprets Section 22 to permit FERC to adjudicate a violation and impose a penalty through merely a paper hearing without the participation of an ALJ. Total further describes the FERC proceedings as "abbreviated"; indeed, a component of its argument is that Congress simply could not have intended for such a short, informal proceeding to result in the imposition of a penalty totaling in the hundreds of millions. This description of the FERC process undermines Total's claims of unduly burdensome proceedings.

No. 16-20642

E. GRADY JOLLY, Circuit Judge, concurring:

I concur in the result reached by the panel majority and agree that Total's claims are due to be dismissed as not yet ripe.

I write separately because of my concerns with the majority's reliance on *Energy Transfer Partners, L.P. ("ETP") v. FERC*, 567 F.3d 134 (5th Cir. 2009). I am not convinced that case necessarily controls our analysis. The difference between that case and the posture of this case is fundamentally different. There, ETP filed an interlocutory petition for appellate court review pursuant to § 19 of the NGA, 15 U.S.C. § 717r.   *ETP*, 567 F.3d at 139-40.  The court "analyze[d] whether this petition for review should proceed under § 19(b) of the NGA and the precedents construing and applying that statute."  *Id.* at 139. The question presented by a § 19(b) petition—the question of "ripeness of agency action for judicial review"—is analyzed under the factors distilled from *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967).  *See ETP*, 567 F.3d at 139-140.

By contrast, the issue here arises from a declaratory judgment action. The question in this declaratory judgment action is whether there is a "case or controversy" sufficient to establish Article III jurisdiction.  *See Orix Credit All.*, 212 F.3d at 896.  Indeed, the panel majority properly acknowledges that *ETP* involved a distinct inquiry, *see supra* at 20 ("This ripeness analysis [in *ETP*] is not identical to the analysis for declaratory judgment actions that we outlined above."), but would nevertheless shoehorn this case into *ETP*'s holding.

Because the *ETP* court applied a different standard from the standard that must be applied to this case, I would not rely on that case so much, but would instead simply ask whether there is "a substantial controversy of sufficient immediacy and reality . . . between parties having adverse legal interests[?]" *Orix*, 212 F.3d at 896 (citations and quotations omitted).

No. 16-20642

I would respond "no" to this question and conclude that the case is not ripe for review. As the majority notes, "FERC is authorized to conduct a proceeding regarding the alleged violation and penalty prior to any action being brought in the district court." *Supra* at 21. FERC is, under the statute, given broad authority to "assess[]" a penalty "after notice and opportunity for public hearing." NGA § 22, 15 U.S.C. § 717t-1; *see also* NGA § 15, 15 U.S.C. § 717n. Even assuming that Total is correct in its argument that it is entitled to *de novo* review of the penalty assessment in district court, no penalty can be said to have been "assessed" until the conclusion of all FERC proceedings. *See* NGA § 22 ("The penalty shall be assessed by the Commission *after* notice and opportunity for public hearing.") (emphasis added). After the "assessment," Total may choose to either (1) challenge the finding through an NGA § 19 petition, or (2) wait for FERC to bring an action for enforcement pursuant to NGA § 24, 15 U.S.C. § 717u, and then raise its arguments that it is entitled to *de novo* adjudication in the district court now that FERC has "assessed" the "proposed" penalty.

In other words, even assuming that Total is correct on the merits of this case, it still does not have standing because the FERC proceedings up to this point are not *ultra-vires*. Total cites no authority for the proposition that subjecting a party to an arguably inefficient though not *ultra-vires* proceeding may constitute an injury sufficient to give rise to an Article III case or controversy. *Cf. Sea–Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 648 (D.C. Cir. 1998); *Stolt–Nielsen SA v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 n.2 (2010).

Accordingly, I concur in the judgment reached by the majority.

25